IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 9, 2017 Session

## KENNETH M. SPIRES ET AL. v. HALEY REECE SIMPSON ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Monroe County**
**No. V 10 359 S     J. Michael Sharp, Judge**

_____

**No. E2015-00697-SC-R11-CV**

_____

We granted permission to appeal in this case to clarify when two Tennessee statutes would apply to preclude a parent who owes child support arrearages from recovering proceeds from a wrongful death lawsuit. In this case, the plaintiff and the decedent were married and had one child; the plaintiff abandoned the decedent and their son soon after the child was born. The plaintiff and the decedent never divorced. The decedent spouse died unexpectedly, and soon afterward the plaintiff surviving spouse filed this wrongful death action. At the time, the plaintiff surviving spouse owed child support arrearages for four other children unrelated to the decedent. The trial court dismissed the plaintiff surviving spouse from the wrongful death lawsuit based on a provision in Tennessee's wrongful death statutes, Tennessee Code Annotated section 20-5-107(b) (2009 & Supp. 2017), and a similar provision in Tennessee's intestate succession statutes, Tennessee Code Annotated section 31-2-105(b) (2015 & Supp. 2017). It held that these two statutes disqualified the plaintiff from filing the wrongful death action or recovering the proceeds from it because he never provided financial support for his child with the decedent spouse and because he had child support arrearages for his four children unrelated to the decedent spouse. The Court of Appeals affirmed in part and reversed in part. It held that the two statutes did not bar the plaintiff from commencing the lawsuit for the wrongful death of his spouse, but it also held that they precluded him from recovering proceeds from the wrongful death lawsuit until his outstanding child support arrearages were satisfied. Consequently, the Court of Appeals ordered that the plaintiff's recovery from the wrongful death action be paid toward satisfaction of his child support arrearages for his four children who were unrelated to the decedent spouse. On appeal, we hold that the prohibitions in Tennessee Code Annotated sections 20-5-107(b) and 31-2-105(b) apply only when (1) the "parent" who seeks to recover in the wrongful death lawsuit is a parent of the decedent child, and (2) that parent's child support arrearage is owed for the support

of that decedent child. Therefore, neither statute is applicable under the facts of this case. Accordingly, the decisions of the lower courts are reversed and vacated insofar as they applied those two statutes to this case. We affirm the Court of Appeals' holding that newly enacted wrongful death statutes regarding a surviving spouse's waiver based on abandonment of a decedent spouse may not be applied retroactively.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed in Part and Reversed and Vacated in Part; Judgment of the Circuit Court Reversed and Vacated; Case Remanded to the Circuit Court**

HOLLY KIRBY, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and ROGER A. PAGE, JJ., joined.

John W. Cleveland, Sr., Sweetwater, Tennessee, for the appellant, Major Dana Trent Hensley, Jr.

Timothy A. Roberto and Ralph Brown, Knoxville, Tennessee, for the appellee, Kenneth M. Spires.

**OPINION**

**FACTUAL AND PROCEDURAL BACKGROUND**

Charity Felicia Spires and Plaintiff/Appellee Kenneth M. Spires married and had one child born during the marriage, a son named Uriah (born in March 2009). In April 2009, a month after Uriah was born, Mr. Spires abandoned Mrs. Spires and the child. Though Mr. and Mrs. Spires did not divorce, Mr. Spires never returned to the marital home. He did not contribute to the financial support of either his wife or his son, Uriah.

In October 2010, when Uriah was about eighteen months old, Mrs. Spires died in a tragic automobile accident involving seventeen-year-old Defendant Haley Reece Simpson. The next month, in November 2010, the Juvenile Court of Monroe County awarded custody of Uriah to his maternal grandmother, Constance Ogle. Ms. Ogle also qualified as administrator of the estate of Mrs. Spires.

On November 18, 2010, Mr. Spires filed this wrongful death lawsuit in the Circuit Court of Monroe County, Tennessee, against Ms. Simpson and her parents, alleging that their negligence resulted in the death of Mrs. Spires (hereinafter "Decedent"). Mr. Spires

filed the complaint in his individual capacity and also as the representative of the Decedent and Uriah. The Simpson defendants denied liability. Discovery ensued.

Over a year later, in March 2012, Ms. Ogle sought to intervene in the wrongful death lawsuit by filing a "Motion to Intervene, to Appoint Guardian, to Dismiss Plaintiff[,] and to Substitute New Plaintiff." In the motion, Ms. Ogle asserted that she should be appointed Uriah's guardian for purposes of the lawsuit and that she should be substituted as the representative plaintiff in Mr. Spires' stead. Ms. Ogle acknowledged Mr. Spires was the Decedent's surviving spouse. She argued, however, that he was disqualified from prosecuting the wrongful death lawsuit in his individual capacity and from recovering any proceeds in the lawsuit because he had failed to contribute any support for Uriah and because he owed child support arrearages to four other mothers for four other children. Ms. Ogle also alleged that Mr. Spires should be disqualified based on his abandonment of the Decedent.

In August 2012, while Ms. Ogle's motion to intervene in the wrongful death lawsuit was still pending, the Chancery Court of Blount County, Tennessee, entered an order of adoption, permitting the Decedent's brother, Captain (now Major) Dana Trent Hensley, Jr., M.D., to adopt Uriah. The adoption order terminated Mr. Spires' parental rights as to Uriah based on abandonment for failure to visit or support Uriah during the four-month period preceding the termination petition.[1] *See* Tenn. Code Ann. §§ 36-1-102(1)(A), 113 (2017).

In November 2013, even though the trial court had not yet entered an order on Ms. Ogle's motion to intervene, Mr. Spires filed a motion asking the trial court to dismiss her from the wrongful death lawsuit for failure to prosecute. Mr. Spires' motion asserted that he had agreed with Ms. Ogle to allow her to join the lawsuit as a plaintiff to represent the Decedent and Uriah but that he would not agree to dismissal of his individual claim.[2] He said in the motion that Ms. Ogle had since refused to correspond with him about moving forward with the lawsuit on those terms. Mr. Spires asked the trial court to dismiss Ms. Ogle from the lawsuit and allow it to proceed with him as the sole plaintiff.

[1] Mr. Spires did not appear in the chancery court proceedings, and he did not contest the termination of his parental rights as to Uriah. The appellate record in this wrongful death lawsuit contains no indication that the chancery court's adoption order was appealed.

[2] Mr. Spires indicated that the trial court had approved the parties' agreement after a hearing in April 2012. He asserted that he had drafted an order memorializing the agreement and sent it to Ms. Ogle for approval but that he had received no response from her. The purported order is not in the appellate record.

In March 2014, after Major Hensley had become Uriah's adoptive father, he and Ms. Ogle filed a joint response to Mr. Spires' motion in the wrongful death lawsuit. Concomitantly, they asked the trial court to permit both Major Hensley and Ms. Ogle to intervene in the lawsuit. They jointly asked the trial court to substitute Major Hensley to represent the interests of Uriah and to substitute Ms. Ogle, as administrator of the Decedent's estate, to represent the Decedent. As in Ms. Ogle's initial motion to intervene, Ms. Ogle and Major Hensley jointly argued that Mr. Spires was disqualified from prosecuting the wrongful death action or from recovering any proceeds from the lawsuit because he had abandoned the Decedent and had failed to support either the Decedent or Uriah prior to the Decedent's death.

In June 2014, the trial court conducted a hearing in the matter. At the hearing, counsel for the Simpson defendants announced that their insurance company, Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"), and all other parties had agreed to settle the matter for insurance policy limits of $100,000. Tennessee Farmers said it was prepared to tender the $100,000 to the trial court to be divided in any manner the court determined.[3] The parties told the trial court they had agreed to accept the $100,000 settlement regardless of the outcome of the other issues pending before the court.

At the same hearing, Mr. Spires stipulated to an assertion in Ms. Ogle's initial motion to intervene—that he has four children (other than Uriah) by four other mothers unrelated to the Decedent. He further stipulated that he was under child support orders as to the other four children and owed child support arrearages in amounts totaling almost $72,000: $15,945; $27,590; $14,865; and $13,532.[4] It was undisputed that there had never been a formal child support order requiring Mr. Spires to pay child support for Uriah, and in fact he had never paid any support for Uriah.

The intervenors argued at the hearing that Mr. Spires' failure to support Uriah or satisfy the child support arrearages for his other four children disqualified him from prosecuting the wrongful death action under Tennessee Code Annotated section 20-5-107(b) (2009 & Supp. 2017). They argued as well that, under Tennessee Code Annotated

---

[3] Counsel for the Simpson defendants indicated he would defer to the trial court's decision on distribution of the insurance proceeds but expressed his opinion that Mr. Spires was not entitled to recover wrongful death proceeds until all of his child support arrearages were paid.

[4] At the hearing, counsel for Mr. Spires said that he could not "verify the exact amounts" of the arrearages, but for purposes of the hearing he stipulated to these approximate amounts.

section 31-2-105(b), Mr. Spires was precluded from recovering any proceeds from the wrongful death lawsuit, regardless of the identity of the named plaintiff. *See* Tenn. Code Ann. § 31-2-105(b) (2015 & Supp. 2017). In addition, the intervenors contended that, pursuant to statutes enacted after the Decedent's death, Mr. Spires' abandonment of the Decedent was deemed a waiver of his right to file a lawsuit asserting the wrongful death of the Decedent. *See* Tenn. Code Ann. §§ 20-5-106(c), 107(e), and 110(c) (2009 & Supp. 2017). For all of these reasons, the intervenors asked the trial court to dismiss Mr. Spires' individual claim and substitute them as plaintiffs on behalf of the Decedent and Uriah. Because the underlying wrongful death lawsuit had been settled, both intervenors asserted that Uriah was entitled to the entire $100,000 in insurance proceeds paid into court.

In response, Mr. Spires argued that he, as the Decedent's surviving spouse, is entitled to prosecute the wrongful death action unless he waives his right or is statutorily disqualified from bringing suit. He argued that the wrongful death statutes in effect at the time of the Decedent's death did not preclude him from prosecuting the lawsuit, they only barred him from "recovering" any proceeds until he satisfied his child support obligations. *See* Tenn. Code Ann. § 20-5-107(b). Mr. Spires did not dispute that he was precluded from recovering any proceeds from the lawsuit until he satisfied his child support arrearages, so his half of the $100,000 in wrongful death proceeds "would not be paid to him, they would be paid towards these child[ ] support arrearages." At the conclusion of the hearing, the trial court took the matter under advisement.[5]

On March 12, 2015, the trial court granted the intervenors' motion; it dismissed Mr. Spires from the lawsuit and substituted Ms. Ogle and Major Hensley as plaintiffs on behalf of the Decedent and Uriah, respectively.[6] The trial court agreed with the intervenors' interpretation of the statutes and held that Mr. Spires was disqualified from either prosecuting the wrongful death lawsuit or recovering any of the settlement proceeds because he never contributed to Uriah's financial support and still "owe[d] substantial arrearages and court-ordered child support payments for his other children with other women." The trial court held that Uriah was the proper party to recover for the wrongful death of his mother and that Major Hensley was the proper party to

---

[5] The trial court approved Tennessee Farmers' offer to pay policy limits into court. On June 30, 2014, the trial court entered an order dismissing the Simpson defendants from the lawsuit. This order was not appealed.

[6] It is unclear from the language of the order whether the trial court approved the intervention of both Major Hensley and Ms. Ogle, but the lack of clarity on this point does not make a difference in our analysis.

represent the minor Uriah in this regard. The trial court ordered that the $100,000 in settlement proceeds be held in trust for the use and benefit of Uriah. *See* Tenn. Code Ann. § 20-5-106(b) (granting the trial court discretion to authorize the placement of a minor's recovery from a wrongful death action in trust for the benefit of the minor). In light of its holding that Mr. Spires was disqualified from prosecuting the wrongful death lawsuit, the trial court denied his request that his attorney fees be paid from the proceeds of the lawsuit.[7] Mr. Spires appealed.

The Court of Appeals reversed.[8] *Spires v. Simpson*, No. E2015-00697-COA-R3-CV, 2016 WL 1697832, at *11 (Tenn. Ct. App. Apr. 26, 2016), *perm. app. granted* (Tenn. Sept. 22, 2016). It held that, although Section 20-5-107(b) prohibits a surviving spouse with outstanding child support debt from recovering in a wrongful death action until his child support obligations are satisfied, it does not disqualify the surviving spouse from commencing and maintaining a wrongful death action. *Id.* at *7. The appellate court also addressed newly enacted statutes that prohibit a surviving spouse from bringing a wrongful death action for the death of his spouse if the surviving spouse had abandoned the deceased spouse. The Court of Appeals held that those statutes were not applicable because they were not in effect at the time of the Decedent's death and were not intended to apply retroactively. *Id.* at *11. Because Mr. Spires was not statutorily disqualified from bringing the action, the Court of Appeals held that he was the proper plaintiff and that Mr. Spires and Uriah were each entitled to half of the settlement proceeds ($50,000 each) under the laws of intestate succession. *Id*.

The Court of Appeals then went further. Although it had held that Mr. Spires was entitled to half of the proceeds of the wrongful death lawsuit, the appellate court also determined that Mr. Spires could not recover any of those proceeds for his own benefit "until his child support obligations, plus applicable interest, are paid." *Id.* (quoting Tenn. Code Ann. § 20-5-107(b)). Based on Mr. Spires' stipulation that he owed almost $72,000 in child support for four other children, the appellate court determined that Mr. Spires'

---

[7] According to Mr. Spires' filing in the Court of Appeals, he had asked the trial court for permission to pay his attorney fees out of his portion of the wrongful death proceeds, not from Uriah's portion. He explained that only his own proceeds should be reduced because he "was not the 'most popular' party to the litigation" and the Simpson defendants were "willing to pay the minor's portion to the minor irrespective of the efforts of [Mr. Spires'] counsel." For these reasons, Mr. Spires concluded that it would have been "inappropriate, and in fact imprudent, to seek to have its [sic] attorney's fees [deducted from Uriah's] portion of the recovery."

[8] Ms. Ogle did not participate in the appeal to the intermediate appellate court. *See Spires*, 2016 WL 1697832, at *3 n.3. Likewise, she did not participate in the appeal to this Court.

entire portion of the lawsuit proceeds had to be paid towards his outstanding child support obligations through the Child Support Receipting Unit. *Id.* According to the Court of Appeals, "Mr. Spires's one-half portion of the wrongful death settlement will now benefit his other children while [Uriah] receives the one-half portion due him as the Decedent's only child."[9] *Id.* at *12.

Mr. Spires filed a petition to rehear on the issue of his attorney fees. He argued that, because the Court of Appeals had held that he was entitled to prosecute the wrongful death action, he was entitled to recover his attorney fees from the proceeds of the lawsuit. The Court of Appeals denied the petition to rehear because Mr. Spires had not raised the issue of his attorney fees in his initial appeal, despite ample opportunity to do so.

We granted Major Hensley's application for permission to appeal.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

In this appeal, Major Hensley argues that Mr. Spires is statutorily disqualified from maintaining this wrongful death lawsuit. In addition, regardless of the identity of the named plaintiff, Major Hensley contends that Mr. Spires is precluded from recovering any of the proceeds from the wrongful death lawsuit. In response, Mr. Spires argues that he is entitled to bring the wrongful death lawsuit for the death of the Decedent and that the statutes upon which the lower courts relied are not applicable in this case. Alternatively, Mr. Spires claims that the Court of Appeals was correct in holding that he is entitled to half of the settlement proceeds, even if his share must go to pay his outstanding child support arrearages.

The issues on appeal in this case require the interpretation of statutes. Such issues present questions of law, subject to de novo review with no presumption of correctness in the lower courts' decisions. *Beard v. Branson*, 528 S.W.3d 487, 494-95 (Tenn. 2017); *State v. Johnson*, 79 S.W.3d 522, 526 (Tenn. 2002); *Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn. 1998).

## ANALYSIS

---

[9] The Court of Appeals also reversed the trial court's order adding Major Hensley as a plaintiff on behalf of Uriah, given that Mr. Spires (as the surviving spouse) is the proper plaintiff and Uriah is only a passive beneficiary under the wrongful death statutes. *Spires*, 2016 WL 1697832, at *13. It affirmed the trial court's appointment of Major Hensley, as the child's legal parent, to serve as the trustee of the funds placed in trust for Uriah. *Id.* at *14.

## A. Statutory Background

As background for our analysis, we will briefly review the statutory framework for wrongful death cases. Because wrongful death proceeds are distributed according to the laws of intestate succession, we review the relevant laws on intestate succession as well.

As we observed in *Beard*, "Tennessee's wrongful death statutes form a patchwork of sorts. 'There are a number of wrongful death statutes which must be considered *in pari materia*.'" *Beard*, 528 S.W.3d at 496 (quoting *Gilliam ex rel. Gilliam v. Calcott*, Nos. E1999-02365-COA-R3-CV, 03A01-9904-CV-00133, 2000 WL 336503, at *2 (Tenn. Ct. App. Mar. 30, 2000)). Under our statutory scheme, a person's right of action for negligence does not abate upon his death. "[T]he right of action that the decedent would have had, but for death, is not extinguished but instead passes to the surviving spouse or, if there is no spouse, to the decedent's children or next of kin." *Id*. at *498 (citing Tenn. Code Ann. § 20-5-106(a)). In the alternative, a wrongful death lawsuit may be filed "by the personal representative of the deceased or by the surviving spouse in the surviving spouse's own name, or, if there is no surviving spouse, by the children of the deceased or by the next of kin."[10] Tenn. Code Ann. § 20-5-107(a). "The personal representative may institute the wrongful death action, but he does so for the benefit of the spouse and/or the other statutory beneficiaries, not the decedent's estate." *Beard*, 528 S.W.3d at 498.

The damages provision in the wrongful death statutes has been described as having a "split personality." *Id*.; *see* Tenn. Code Ann. § 20-5-113. The statutory beneficiaries in a wrongful death action may recover "damages for *their* losses suffered as a result of the death as well as damages sustained by the deceased from the time of injury to the time of death." *Beard*, 528 S.W.3d at 498 (quoting *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 598 (Tenn. 1999)) (emphasis in original); *see* Tenn. Code Ann. § 20-5-113.

Under the wrongful death statutes, "the decedent's surviving spouse, if there is one, has 'the prior and superior right above all others' to file the wrongful death action and control the litigation." *Beard*, 528 S.W.3d at 499 (quoting *Foster v. Jeffers*, 813

---

[10] We explained in *Beard* that "if none of these statutorily prescribed beneficiaries exist, then the cause of action cannot be brought, because the existence of one of these beneficiaries is a prerequisite to bringing an action for wrongful death." *Beard*, 528 S.W.3d at 500 (quoting *Foster v. Jeffers*, 813 S.W.2d 449, 451 (Tenn. 1991)).

S.W.2d 449, 451 (Tenn. 1991)). "Once the surviving spouse has asserted his or her right or priority, the statutes give to the surviving spouse complete 'control over the right of action until he or she waives that right.'" *Id.* (quoting *Kline v. Eyrich,* 69 S.W.3d 197, 207 (Tenn. 2002) (internal quotation marks omitted)).

Even though the surviving spouse has the right to file the wrongful death lawsuit and to control it, the proceeds do not belong solely to the surviving spouse if the decedent had children. While the wrongful death statutes do not describe how the proceeds of a wrongful death action are to be distributed, Tennessee courts have consistently held that the proceeds are distributed according to the laws of intestate succession. *Id.* (citing *Kline*, 69 S.W.3d at 202 n.3; *Foster*, 813 S.W.2d at 452). Under our laws of intestate succession, if an intestate decedent leaves both a surviving spouse and children, the surviving spouse receives one-third of the decedent's estate or a child's share of the estate, whichever is greater. Tenn. Code Ann. § 31-2-104(a) (2015). If the decedent has no surviving spouse, the estate is distributed to the decedent's issue according to their degree of kinship. *Id.* § 31-2-104(b)(1). If the decedent has no surviving spouse and no issue, the entire intestate estate passes "to the decedent's parent or parents equally." *Id.* § 31-2-104(b)(2). Reading the wrongful death statutes together with the laws of intestate succession, the decedent's surviving spouse is entitled to file the wrongful death action, but the decedent's children are entitled to share in the wrongful death proceeds as "passive" beneficiaries. *Beard*, 528 S.W.3d at 501 (discussing *Kline*, 69 S.W.3d at 207).

### B. Disqualification for Failure to Support

The parties in this case do not dispute that Mr. Spires is the Decedent's surviving spouse. All acknowledge that Mr. Spires would ordinarily have priority to file a wrongful death lawsuit based on the death of the Decedent and that he would ordinarily be entitled to share in the proceeds of the lawsuit.

In this appeal, however, Major Hensley argues that Mr. Spires is statutorily disqualified from bringing a lawsuit based on the wrongful death of the Decedent because he never paid financial support for Uriah and because he had outstanding child support arrearages for four other children unrelated to the Decedent. In support of this argument, Major Hensley relies primarily on Section 20-5-107(b),[11] which provides:

---

[11] In the trial court, Major Hensley appeared to rely to some extent on subsection (c) of Section 20-5-107, which states:

> (b) In no event shall a parent be permitted to recover through an action commenced pursuant to subsection (a) until all child support arrearages, together with interest on the child support arrearages, at the legal rate of interest computed from the date each payment was due, have been paid in full to the parent ordered to receive the support or to the parent's estate if deceased.

Tenn. Code Ann. § 20-5-107(b). As we have indicated, subsection (a) of this statute, referenced in subsection (b) quoted above, outlines who may file a wrongful death lawsuit. *Id.* § 20-5-107(a). Although that subsection grants the surviving spouse superior rights, Major Hensley contends that, because Mr. Spires is a "parent" who owes child support arrearages, subsection (b) of section 20-5-107 precludes him from filing this lawsuit for the wrongful death of his spouse.

Major Hensley also argues that, regardless of the identity of the named plaintiff, Section 31-2-105(b) in the intestate succession statutes bars Mr. Spires from sharing in the proceeds of any wrongful death lawsuit based on the death of the Decedent:

> (b) In no event is a parent permitted to inherit through intestate succession or under a will or trust or by contract until all child support arrearages together with any interest owed, at the legal rate of interest computed from the date each payment was due, have been paid in full to the parent ordered to receive support or to the parent's estate if deceased.

*Id.* § 31-2-105(b). As we have said, this intestate succession statute, which describes a parent's right to inherit or take under a will, also applies to determine the distribution of the proceeds of a wrongful death lawsuit. *Beard*, 528 S.W.3d at 499 (citing *Kline*, 69 S.W.3d at 202 n.3; *Foster*, 813 S.W.2d at 452). Similar to his argument regarding Section 20-5-107(b) of the wrongful death statutes, Major Hensley argues that Mr. Spires is a "parent" who owed child support arrearages, so Section 31-2-105(b) of the intestate

---

> [A] parent who has intentionally refused or neglected to pay any support for a child for a two-year period, or for the life of the child, whichever is less, when subject to a court order requiring the payment of child support and who has intentionally refused or neglected to contact the child or exercise visitation during such period, shall not be permitted to recover through [a wrongful death] action. . . .

Tenn. Code Ann. § 20-5-107(c). It is unclear whether Major Hensley continues to rely on this subsection. Regardless, our analysis of subsection (b) of this statute applies with equal force to subsection (c).

succession statutes prohibits him from "recover[ing]" in the lawsuit for the wrongful death of his wife. Major Hensley maintains that the "plain language" of both statutes applies to prevent Mr. Spires from either filing this lawsuit for the wrongful death of the Decedent or from sharing in any of the proceeds from it.

In response, Mr. Spires argues that the statutes quoted above are applicable only when the parent of a deceased child seeks to recover under the wrongful death statutes for the death of that child. In that context, he contends, the statutes apply only when the child support arrearage is owed for the decedent child, not for children unrelated to the decedent. Therefore, he argues, neither statute applies in this case.[12] Alternatively, Mr. Spires argues that the Court of Appeals was correct in determining that he is not disqualified from prosecuting the suit, even if the proceeds that otherwise would have gone to him must go toward his outstanding child support obligations.

We see the pivotal issue as whether Section 20-5-107(b) and Section 31-2-105(b) should be interpreted to apply to disqualify a person who is a "parent" and owes a child support arrearage from prosecuting or recovering from a wrongful death lawsuit either (1) without regard to how the person is related to the decedent and without regard to the identity of the child for whom the arrearage is owed, as argued by Major Hensley, or (2) only where the person is a parent of the decedent child and the child support arrearage is owed for that decedent child, as argued by Mr. Spires.

With the issue so framed, we proceed to consider these statutes under our principles of statutory construction. "The cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being aides [sic] to that end." *Browder*, 975 S.W.2d at 311; *see Beard*, 528 S.W.3d at 496. We examine "the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." *State v. Collins*, 166 S.W.3d 721, 726 (Tenn. 2005) (citation omitted) (internal quotation marks omitted). "'We must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning.'" *Beard*, 528 S.W.3d at 496 (quoting *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001)).

---

[12] Mr. Spires acknowledges in his appellate brief that he "did not assert this interpretation [of Section 20-5-107(b)] in the earlier stages of this [a]ppeal. This interpretation was offered by Judge Susano at the Court of Appeals during oral argument." Appellee's Brief at p. 9. Nevertheless, Mr. Spires adopts the argument in his appeal to this Court.

We look first at the plain language of the relevant statutes. In light of the competing arguments regarding the interpretation of the term, "parent," in this case, we conclude that the term, "parent," as used in both statutes is ambiguous.[13] *See Bryant v. HCA Health Servs. of N. Tenn., Inc.*, 15 S.W.3d 804, 809 (Tenn. 2000) ("A statute is ambiguous if the statute is capable of conveying more than one meaning."). When a statute is ambiguous, "we construe the statute's meaning by examining 'the broader statutory scheme, the history of the legislation, or other sources.'" *In re Music City RV, LLC*, 304 S.W.3d 806, 810 (Tenn. 2010) (quoting *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008)).

A review of the entirety of Tennessee's wrongful death statutes reveals that, in describing a person's rights and remedies, all of them use terminology denoting how that person is related to the decedent. For example, we have explained that Section 20-5-106 provides that the deceased person's right of action passes to "the person's surviving spouse," meaning, of course, the *decedent's* surviving spouse. Tenn. Code Ann. § 20-5-106(a). If the decedent has no surviving spouse, the right of action passes to "the person's children or next of kin," meaning the *decedent's* children or the *decedent's* next of kin. *Id*. The right of action may also pass to "the person's personal representative" (for the benefit of the surviving spouse or next of kin), meaning the *decedent's* personal representative. *Id*. (emphases added). Similarly, in Section 20-5-107, some of the parties who are entitled to file the wrongful death lawsuit are explicitly described in relation to the decedent ("the personal representative *of the deceased*" and "children *of the deceased*"). *Id.* § 20-5-107(a) (emphases added). For others listed in Section 20-5-107, the relationship to the decedent is implicit but clear from the context ("the [*decedent's*] surviving spouse" and "the [*decedent's*] next of kin"). *Id*. Likewise, in other wrongful death statutes, the relationship to the decedent is sometimes explicit, and other times it is implicit. *See, e.g.*, *id.* § 20-5-108(b) (2009) (stating that damages from the lawsuit "shall go to the surviving spouse and next of kin" without specifying that they are those *of the decedent*). *But see id.* § 20-5-110(a) (stating that the suit may be brought "for the benefit of the surviving spouse *of the deceased*, in the name of the administrator *of the deceased spouse*[,] or in the name of the next of kin *of the spouse*"). Regardless, it is uniformly apparent from the context that, in all of these statutes, the description of each person is intended to convey how they are related to the decedent.

---

[13] Specifically, we are interpreting the term, "parent," as it is used in the phrase, "[i]n no event shall a parent be permitted to recover," in Section 20-5-107(b) and in the phrase, "[i]n no event is a parent permitted to inherit," in Section 31-2-105(b).

Similarly, the intestate succession statutes describe the heirs' rights in terms of how each person is related to the decedent. For example, Section 31-2-104 describes "[t]he intestate share of the surviving spouse," and the fact that it means the surviving spouse of the decedent is unstated but abundantly clear. *Id.* § 31-2-104(a). The next sections describe the manner of distribution to the "issue *of the decedent*" and "the *decedent's* parent or parents," thus including an explicit reference to the decedent. *Id.* § 31-2-104(b). The same statute also refers to "the brothers and sisters" without further specification; this can only be a reference to the brothers and sisters *of the decedent*. *Id.* (emphases added). Thus, all of the relational terms used in these statutes (surviving spouse, children, next of kin, etc.) refer either explicitly or implicitly to how each person is related to the decedent.

Against that backdrop, we consider the issues in this appeal, namely, whether the term, "parent," as used in Sections 20-5-107(b) and 31-2-105(b) is limited to a parent of the decedent child and whether the child support arrearage referenced in Section 20-5-107(b) and Section 31-2-105(b) is limited to an arrearage in support for the decedent child, despite the fact that neither statute says so explicitly. We are mindful that we must construe these two statutes in the context of the entire framework of statutes that govern wrongful death actions:

> Statutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both. "[T]he construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn.2010) (quoting *Wilson v. Johnson Cnty.*, 879 S.W.2d 807, 809 (Tenn.1994)). We seek to adopt the most "reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws." *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn. 1997).

*In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015); *see also Beard*, 528 S.W.3d at 496.

In light of these principles, we conclude that Sections 20-5-107(b) and 31-2-105(b) apply only to a "parent" of the decedent child and that the child support arrearage must be owed for the support of that decedent child. There are several reasons for this holding.

First, reading "parent" as being the parent *of the decedent* is consistent with other sections that describe a person's rights and remedies in terms of how they are related to

the decedent. In other words, given that the other relational terms (surviving spouse, children, next of kin, etc.) always refer to relatives of the decedent, whether explicit or implicit, it is consistent to construe "parent" as used in subsection (b) of both statutes as the parent *of the decedent*.

Second, this construction of "parent" aligns with the apparent purpose and function of the statutory framework for wrongful death cases. As we have mentioned, when a child dies (without a surviving spouse or issue), that child's parents have priority to file a wrongful death action (under Section 20-5-106(a)) and share equally in the proceeds of the action under the laws of intestate succession (under Section 31-2-105(b)(2)). With that understanding, it is logical to interpret the statutes at issue in this appeal as applying in situations in which a child has died, the parents are separated or divorced, and one parent owes the other parent child support for the decedent child. In this manner, the statutes are seen as intended to bar the obligor parent from benefitting monetarily from the wrongful death of a child whom he or she failed to financially support. Viewed in this context, it makes sense to infer legislative intent to require the obligor parent to satisfy his or her child support debt to the other parent before he or she will be permitted to benefit monetarily from the death of that child.

Third, "[w]e 'must presume that the Legislature did not intend an absurdity and adopt, if possible, a reasonable construction which provides for a harmonious operation of the laws.'" *Martin v. Powers*, 505 S.W.3d 512, 518 (Tenn. 2016) (quoting *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997)). "[W]e will not apply a particular interpretation to a statute if that interpretation would yield an absurd result." *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000). Respectfully, the interpretation urged by Major Hensley yields just such a result.

The facts in this case illustrate how Major Hensley's proposed interpretation leads down a statutory rabbit hole. He contends that both statutes should apply where, as here, the plaintiff in the wrongful death lawsuit is the surviving spouse of the decedent. However, the statutes upon which he relies are expressly limited to situations in which the wrongful death claimant has "child support arrearages." Parents who are married to one another normally will not have a child support order in force between them as to their children,[14] so the statutes by their terms cannot apply to a surviving spouse who did not financially support a child of the marriage but seeks to recover for the death of the decedent spouse. For parents who are not married to each other, there may be a child support order in place for their child, but the other parent in that circumstance is not

---

[14] A limited, temporary exception may arise where a divorce is pending but not yet final.

among the listed statutory beneficiaries who can file a wrongful death action based on the death of the other parent, so the statutes cannot apply there either. In fact, under Major Hensley's interpretation, the *only* circumstance in which the statutes would even arguably apply is where, as here, the plaintiff surviving spouse owes a child support arrearage for a child who is *not related in any way* to the decedent spouse.

Moreover, Major Hensley's interpretation would not be limited to wrongful death plaintiffs who are the surviving spouse of the decedent spouse; it would apply to any wrongful death action in which the plaintiff happens to be a parent who owes child support.[15] Thus, under this interpretation, where a plaintiff files a lawsuit to recover for the wrongful death of a remote relative such as a cousin or nephew, the statutes on which Major Hensley relies would arguably apply to preclude the plaintiff from recovering if he owes child support arrearages for a child completely unrelated to the decedent. This construes Sections 20-5-107(b) and 31-2-105(b) to permit virtual strangers to the decedent to financially benefit from the decedent's death.[16] This result, which is incongruent with the remedial scheme of the wrongful death statutes, is avoided by limiting the application of the statutes to circumstances in which the wrongful death claimant is a parent *of the decedent child* and the child support arrearage is owed for that decedent child. *See Martin*, 505 S.W.3d at 518 (noting that we should presume that the Legislature did not intend an absurdity when a reasonable construction exists).

Major Hensley argues on appeal that legislative history of the statutes supports his assertion that the legislature did not intend to limit Sections 20-5-107(b) and 31-2-105(b) to situations in which the "parent" to which the statutes refer is the parent *of the decedent*. It does not. Respectfully, the legislative history shows clearly that the *only* circumstance contemplated by the legislature involves a parent who seeks to benefit financially, through either inheritance or a wrongful death action, from the death of a child for whom the claimant owes back child support.

---

[15] Indeed, it would apply to any statutory beneficiary who would share in the wrongful death proceeds, not just a plaintiff in a wrongful death lawsuit.

[16] It also raises the prospect of persons who are not related to the decedent intervening in the wrongful death lawsuit in order to establish that the claimant owed child support to them. Thus, the wrongful death proceedings could end up including a lawsuit-within-the-lawsuit regarding the wrongful death claimant's child support obligations to persons wholly unrelated to the decedent. In the instant case, for example, had Mr. Spires' child support arrearages for his four other children not been stipulated, there could have been *four* such lawsuits-within-the-lawsuit.

In 1994, a bill sponsored by Representative Ken Givens, proposing Section 20-5-107(b) of the wrongful death statutes as well as Section 31-2-105(b) of the intestate succession statutes, was filed in the Tennessee General Assembly. Representative Givens said at the time that the purpose of the bill was "to correct a situation in Tennessee where apparently people whom I will call 'deadbeat' parents can at some point in time benefit from *the death of a child.*" *Hearing on H.B. 1704 Before the House Judiciary Committee*, 98th Gen. Assemb. (Feb. 9, 1994) (statement of Rep. Ken Givens) (emphasis added). He explained that he was prompted to file the bill by an incident in which an eighteen-year-old female, abandoned by her father for most of her life, died in an automobile accident. The decedent's mother initially received all of the life insurance proceeds, but the decedent child's absentee father returned and claimed half of the proceeds. The mother to whom Representative Givens referred testified before the House Judiciary Committee on February 9, 1994, to describe her experience. *Id.* Givens explained to the House Judiciary Committee that he proposed the legislation in order "to clear the Code up [so] that this can never occur again." *Id.*

Representative Givens' bill underwent several revisions, accompanied by much discussion regarding its application and scope. The discussion reflects that, at all times, the purpose of the bill was to remedy the situation in which an estranged parent—one who failed to financially support his or her child—attempts to benefit financially from the death of that child, either through intestate succession or in a wrongful death action. In the March 28, 1994 House session, Representative Givens summarized the intent of his proposed bill: "[I]n a situation where *a child dies*, and actually there is money in an estate, the deadbeat parent, whether it be a mother or a father, cannot benefit until all child support is satisfied and is paid. And that, quite simply, is what this bill tries to do . . . ."[17] *Hearing on H.B. 1704 Before the House*, 98th Gen. Assemb. (March 28, 1994) (statement of Rep. Ken Givens) (emphasis added). The Senate sponsor, Senator Danny

---

[17] Representative Givens explained the background for the bill at the House session:
[S]ometime ago a young lady who was 18 years old had an accident, and sometime after the accident it was discovered that her estate would get an insurance settlement, and very soon after this discovery, a deadbeat parent (in this case, a father) came forward and asked for one half of the insurance proceeds. And according to Tennessee law, he was entitled to that insurance settlement, even though he had never provided any support to this child whatsoever. So, what this bill—what this amendment—seeks to do is to create a situation whereby, in a situation where a child dies, and actually there is money in an estate, the deadbeat parent, whether it be a mother or a father, cannot benefit until all child support is satisfied and is paid.

*Hearing on H.B. 1704 Before the House*, 98th Gen. Assemb. (March 28, 1994) (statement of Rep. Ken Givens).

Wallace, gave the Senate Judiciary Committee a similar explanation, saying that *"a parent can't inherit from the wrongful death *of a child* without a will until all child support is paid."* *Hearing on S.B. 1690 Before the S. Judiciary Comm.* 98th Gen. Assemb. (March 30, 1994) (statement of Sen. Danny Wallace) (emphasis added).

Thus, the legislative history does not support the interpretation of Sections 20-5-107(b) and 31-2-105(b) urged by Major Hensley in this appeal. The legislative history indicates clearly that those statutes were viewed by the legislature as applying to situations in which the "parent" who owes child support is a parent of a decedent child, and the child support arrearage is due for the past support of that decedent child. It contains no indication that the legislature intended either statute to apply where, as here, the wrongful death claimant is the surviving spouse of a decedent spouse.

For all of these reasons, we hold that the term, "parent," as used in Sections 20-5-107(b) and 31-2-105(b), is limited to a parent of the decedent child who owes a child support arrearage for the support of that decedent child.[18] Therefore, the lower courts erred in applying those statutes to the facts presented in this case.[19] Accordingly, the decisions of the trial court and the Court of Appeals are reversed and vacated insofar as they applied Sections 20-5-107(b) and 31-2-105(b) to the instant case.[20]

## C. Waiver Based On Abandonment of Spouse

In the alternative, Major Hensley argues that, by abandoning the Decedent, Mr. Spires waived his right to bring this wrongful death action for her death based on Tennessee Code Annotated sections 20-5-106(c), 107(e), and 110(c). All of these provisions were enacted at the same time, and each includes the following language:

---

[18] Under the facts of this case, our holding applies to the term "parent" as it is used in the phrase, "[i]n no event shall a parent be permitted to recover" in Section 20-5-107(b) and in the phrase "[i]n no event is a parent permitted to inherit," in Section 31-2-105(b).

[19] In light of our holding, we need not address the Court of Appeals' conclusion that Section 20-5-107(b) only prevents *recovery* in a wrongful death action and does not prevent a parent from filing or prosecuting a wrongful death lawsuit. *See Spires*, 2016 WL 1697832, at *7.

[20] Our holding does not preclude the parents or guardians of Mr. Spires' other four children from using other legal means to reach any proceeds he may obtain from this lawsuit, to collect outstanding child support arrearages owed by Mr. Spires.

(1) Notwithstanding any other law to the contrary, the right to institute and the right to collect any proceeds from a wrongful death action granted by this section to a surviving spouse shall be waived, if the children or next of kin establish the surviving spouse has abandoned the deceased spouse as described in § 36-4-101(a)(13) or otherwise willfully withdrawn for a period of two (2) years.

(2) If the period of two (2) years has passed since the time of abandonment or willful withdrawal then there is created a rebuttable presumption that the surviving spouse abandoned the deceased spouse for purposes of this section.

Tenn. Code Ann. §§ 20-5-106(c)(1)(2), 107(e)(1)(2), and 110(c)(1)(2).

All of these statutes, enacted as part of the same bill, became effective on May 30, 2011, well after the Decedent's accident in October 2010. *See Rogers v. Donelson-Hermitage Chamber of Commerce*, 807 S.W.2d 242, 244-45 (Tenn. Ct. App. 1990) (noting that the "right of action for the defendants' alleged tortious conduct arose at the time of [the decedent's] injuries"). Therefore, they apply only if they were intended to have retroactive application.

The Court of Appeals held that these statutes could not apply retroactively because "the right to recover through a wrongful death settlement is a vested right that cannot constitutionally be affected by retroactive application of a statute." *Spires*, 2016 WL 1697832, at *10 (citing *Rogers*, 807 S.W.2d at 244-45; *Cliburn v. Sullivan*, No. M2003-02563-COA-R3-CV, 2005 WL 292360, at *4 (Tenn. Ct. App. Feb. 7, 2005)).[21] Consequently, it denied relief to Major Hensley based on these statutes.

We agree with the Court of Appeals that Tennessee Code Annotated sections 20-5-106(c)(1)(2), 107(e)(1)(2), and 110(c)(1)(2) cannot be applied retroactively in this case. We adopt the reasoning of the Court of Appeals on this issue and affirm this portion of the Court of Appeals' holding for the reasons stated in its opinion.

---

[21] In addition, the Court of Appeals noted that Mr. Spires had abandoned the Decedent for a period of less than two years, less time than the period of abandonment specified in the statutes.

- 18 -

## CONCLUSION

In sum, we hold that the prohibitions in Tennessee Code Annotated sections 20-5-107(b) and 31-2-105(b) are intended to apply only to cases in which the "parent" who seeks to recover in a wrongful death lawsuit is a parent of the decedent child, and the child support arrearage is owed for the support of that decedent child. Neither statute is applicable under the facts of this case, in which the wrongful death plaintiff is the surviving spouse of the decedent spouse. Consequently, we reverse and vacate the decisions of the trial court and the Court of Appeals applying Sections 20-5-107(b) and 31-2-105(b) in this case. We affirm the Court of Appeals' conclusion that Tennessee Code Annotated sections 20-5-106(c)(1)(2), 107(e)(1)(2), and 110(c)(1)(2) may not be applied retroactively to this case. Accordingly, we remand the case to the trial court for further proceedings consistent with this opinion. On remand, the trial court may, in its discretion, address Mr. Spires' argument regarding the payment of his attorney fees.[22] All other issues raised in this appeal and not specifically addressed herein are pretermitted by our decision.

The decision of the trial court is reversed and vacated; the decision of the Court of Appeals is affirmed in part and reversed and vacated in part, as set forth above, and the case is remanded to the trial court for further proceedings consistent with this opinion. Costs on appeal are to be taxed to Appellant Major Dana Trent Hensley, Jr., and his surety, for which execution may issue, if necessary.

_____
HOLLY KIRBY, JUSTICE

---

[22] As noted above, Mr. Spires argued to the trial court that his attorney fees should be paid out of his portion of the wrongful death proceeds, before those proceeds were applied to his child support arrearages. This argument was based on an erroneous interpretation of Section 20-5-107(b) and is obviated to some extent by our holding that the statute is inapplicable.

- 19 -