FILED
09/29/2023
Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 5, 2022 Session

## ROBERT CROTTY, ET AL. v. MARK FLORA, M.D.

**Appeal by Permission from the Court of Appeals
Circuit Court for Davidson County
No. 17C614  Joe P. Binkley, Jr., Judge**

_____

**No. M2021-01193-SC-R11-CV**

_____

ROGER A. PAGE, C.J., concurring in part and dissenting in part.

This interlocutory appeal involves two pretrial orders.  I concur with the holding and analysis of the majority as to the first pretrial order involving Rule 8.03 and *George v. Alexander*, 931 S.W.2d 517 (Tenn. 1996).  However, I respectfully dissent from the majority's holding and analysis as to the second pretrial order involving Tennessee Code Annotated section 29-26-119 and the collateral source rule.  This issue requires the Court to interpret the meaning of section 29-26-119.  I would hold that, when section 29-26-119 governs damages in a health care liability action, the statute's clear language contemplates only "actual economic losses suffered . . . paid or payable," thereby abrogating the collateral source rule.  Thus, I would reverse the trial court's pretrial order.

## I.

As explained by this Court in *Dedmon v. Steelman*, 535 S.W.3d 431 (Tenn. 2017), "the collateral source rule has evolved as both a substantive rule of law and an evidentiary rule." *Id.* at 443.  "Substantively, it affects the amount of damages that may be awarded against a defendant by prohibiting reduction of a plaintiff's recovery by benefits from sources unrelated to the tortfeasor." *Id.*  "The evidentiary component of the collateral source rule flows from the rule of law.  If a plaintiff's recovery may not be reduced by collateral benefits, then 'evidence that a plaintiff has received benefits or payments from a collateral source independent of the tortfeasor's procuration or contribution' must be excluded." *Id.* at 444 (quoting *Bozeman v. State*, 879 So. 2d 692, 699 (La. 2004)).  With this common law rule in mind, the language of section 29-26-119 provides:

> In a health care liability action in which liability is admitted or established,
> the damages awarded may include (in addition to other elements of damages

authorized by law) actual economic losses suffered by the claimant by reason of the personal injury, including, but not limited to, cost of reasonable and necessary medical care, rehabilitation services, and custodial care, loss of services and loss of earned income, but only to the extent that such costs are not paid or payable and such losses are not replaced, or indemnified in whole or in part, by insurance provided by an employer either governmental or private, by social security benefits, service benefit programs, unemployment benefits, or any other source except the assets of the claimant or of the members of the claimant's immediate family and insurance purchased in whole or in part, privately and individually.

Tenn. Code Ann. § 29-26-119 (2012).

The parties' arguments on appeal boil down to the correct interpretation of section 29-26-119. They dispute whether the trial court abused its discretion by applying an incorrect legal standard when it ruled that the "'cost of reasonable and necessary medical care' refers to the amount charged by the provider, not the amount paid," and that "the collateral source rule is in full force and effect" in this case.

"Generally, the admissibility of evidence is within the sound discretion of the trial court." *Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 294 (Tenn. 2017) (quoting *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004)). However, a "trial court's decision to admit or exclude evidence will be overturned on appeal only where there is an abuse of discretion," such as applying an incorrect legal standard. *Id.* (quoting *Mercer*, 134 S.W.3d at 131).

The majority holds that "[a]ssuming . . . Mr. Crotty's claimed medical expenses were paid 'in whole or in part by insurance' that was 'purchased in whole or in part privately and individually,' the trial court did not err in holding that 'the collateral source rule is in full force and effect' as the premise for its ruling on the parties' cross-motions in limine." As with the majority, I also "defer to the trial court's conclusion that Mr. Crotty's claimed medical expenses were paid 'in whole or in part by insurance' that was 'purchased in whole or in part privately and individually.'" However, in contrast with the majority, I do not believe that fact determines the outcome of this issue.

## II.

We review questions of statutory interpretation, like the one presented here, de novo. *Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 59 (Tenn. 2023). When interpreting a statute, "[w]e look to 'the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment.'" *Yebuah v. Ctr. for Urological Treatment, PLC*, 624

S.W.3d 481, 486 (Tenn. 2021) (quoting *Spires v. Simpson*, 539 S.W.3d 134, 143 (Tenn. 2017)).  "The text of the statute is of primary importance." *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015) (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)).  "[O]ur role is to determine how a reasonable reader would have understood the text at the time it was enacted." *Lawson*, 661 S.W.3d at 59 (citing *State v. Deberry*, 651 S.W.3d 918, 924 (Tenn. 2022)).  "We give terms their natural and ordinary meaning in their statutory context unless the statute defines them." *Id.* (citing *Mills*, 360 S.W.3d at 368).  "In the absence of statutory definitions, we look to authoritative dictionaries published around the time of a statute's enactment." *Deberry*, 651 S.W.3d at 925 (citing *State v. Edmondson*, 231 S.W.3d 925, 928 & n.3 (Tenn. 2007)).  Further, "[c]ourts presume that every word in a statute has meaning and purpose and that these words 'should be given full effect if the obvious intention of the General Assembly is not violated by so doing.'" *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013) (quoting *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011)).  If a statute is in derogation of the common law, it must be "strictly construed and confined to [its] express terms." *Moreno v. City of Clarksville*, 479 S.W.3d 795, 809 (Tenn. 2015) (quoting *Doyle v. Frost*, 49 S.W.3d 853, 858 (Tenn. 2001)).

## III.

Although section 29-26-119 is certainly "not a model of clarity" as the majority admits, in my view, its language is still sufficiently clear to conclude that it abrogates the collateral source rule and only permits recovery of the actual amounts paid or payable by Plaintiffs or their insurance.  The first half of the statute (beginning with "In a health care liability action" and ending with "loss of earned income") provides the overarching rule of the statute.  Tenn. Code Ann. § 29-26-119.  This portion outlines what "the damages awarded may include" in a health care liability action.  *Id.*  Section 29-26-119 states that "the damages awarded may include (in addition to other elements of damages authorized by law) *actual economic losses suffered* by the claimant by reason of the personal injury." *Id.* (emphasis added).  As the majority highlights, the statute does not define the term "actual economic losses," but instead provides some non-exclusive examples.  Although the list of non-exclusive examples is useful in attempting to ascertain the meaning of "actual economic losses suffered," it is still necessary to first interpret the preceding undefined language that provides the overarching rule of the statute.  *See Lawson*, 661 S.W.3d at 59.

The word "actual" means "[i]n existence; real; factual." *Actual*, The American Heritage Dictionary of the English Language 14 (1969).  The adjective "economic" means "[o]f or pertaining to matters of finance." *Economic*, The American Heritage Dictionary of the English Language 413 (1969).  The noun "loss" means "[s]omething or someone that is lost" or "[t]he amount of a claim on an insurer by an insured." *Loss*, The American Heritage Dictionary of the English Language 771 (1969).  Piecing these definitions

- 3 -

together, "actual economic losses" under section 29-26-119 "may include" a financial amount that is lost and in existence, or the real financial amount of a claim on an insurer by an insured. Critically, section 29-26-119 also requires that these losses be "suffered." The verb "suffer" means to "sustain loss, injury, harm, or punishment." *Suffer*, The American Heritage Dictionary of the English Language 1286 (1969).

Based on this language, it is evident that the losses contemplated by this statute only involve the actual amounts paid by Plaintiffs or their insurance rather than the full, undiscounted amounts. The majority highlights the definition of the word "actual" to make the point that the undiscounted costs do exist and are not legally imputed. However, as emphasized above, the statute does not stop there. Importantly, the word "suffered" requires that the losses actually be sustained. Here, neither Plaintiffs nor their insurance sustained a loss for the full, undiscounted medical bills. Rather, the losses sustained in this instance were the expenses *actually* paid by Plaintiffs or their insurance. Any negotiated rate differential or write-off cannot be said to have been "suffered" under the statute if neither Plaintiff nor their insurance will ever be required to pay it. In contrast to the facts of this case, the majority provides a hypothetical in which "a patient's insurance company denies his claim," and the "patient gets no benefit from any discounts negotiated by the insurance company." However, in that hypothetical, the undiscounted fees would be "suffered" under the statute because the patient would actually sustain those losses by being obligated to pay them.

Before moving to the second half of section 29-26-119, it is also necessary to address the following language: "cost of reasonable and necessary medical care." Similar language was also at issue in *Dedmon*, 535 S.W.3d at 446–50, and *West v. Shelby County Healthcare Corporation*, 459 S.W.3d 33, 43–44 (Tenn. 2014) (holding that "reasonable charges" for medical services under the Tennessee Hospital Lien Act are the discounted amounts a hospital accepts as full payment). While *Dedmon* provided that "*West* was intended only to construe the phrase 'reasonable charges' in the context of determining the maximum amount of a hospital's HLA lien," 535 S.W.3d at 450, it is important to note that *Dedmon* did not involve a specific statutory scheme like this case or the *West* case. *See id.* at 450–51. Rather, *Dedmon* interpreted the phrase "reasonable medical expenses" in the context of generic personal injury cases. *Id.* at 437.

Here, we are faced with a statutory scheme in the specific context of the Health Care Liability Act. Similar to the Court in *West* interpreting the phrase "reasonable and necessary charges for hospital care" in the context of the Hospital Lien Act, 459 S.W.3d at 44, we must interpret the phrase, "cost of reasonable and necessary medical care," in the context of section 29-26-119. The "cost of reasonable and necessary medical care" is among the list of examples of "actual economic losses" provided in the statute. Tenn. Code Ann. § 29-26-119. And as explained above, the overarching rule of section 29-26-119 explicitly contemplates only "actual economic losses suffered." Thus, in the context of

this statute, the "cost of reasonable and necessary medical care" refers to the expenses actually paid by Plaintiffs or their insurance.

In addition to the plain meaning of the first half of the statute, the plain meaning of the second half of the statute (beginning with the phrase "but only to the extent") further supports the conclusion that section 29-26-119 abrogates the collateral source rule. I agree with the amicus that the second portion of the statute "defines when a plaintiff has borne or 'suffered' an 'actual economic loss.'" To reiterate the statute's language, "actual economic losses" may be recovered,

> but only to the extent that such costs are not *paid or payable* . . . by insurance provided by an employer either governmental or private . . . or any other source *except* the assets of the claimant or of the members of the claimant's immediate family and insurance purchased in whole or in part, privately and individually.

Tenn. Code Ann. § 29-26-119 (emphasis added).

The language "paid or payable" further supports the plain meaning of "actual economic losses suffered" interpreted above. The word "paid" is the past tense of "pay" and means "[t]o remunerate or recompense for goods or services rendered" or "[t]o give the indicated amount of; discharge (a debt or obligation)." *Pay*, The American Heritage Dictionary of the English Language 963 (1969). In this case, the amount remunerated and that discharged the financial obligation was the amount *actually* paid by Plaintiffs or their insurance. Further, the word "payable" means "[r]equiring payment on a certain date; due" or "[t]hat can or may be paid." I agree with Defendant's argument that if "neither the Plaintiff nor his insurance company is obligated to pay the 'charged' amount, . . . then the charged amount cannot be defined as payable." Thus, stated in positive terms, if the "actual economic losses suffered" are "paid or payable" by "the assets of the claimant or of the members of the claimant's immediate family and insurance purchased in whole or in part, privately and individually," then the losses actually sustained are recoverable under the statute.

This conclusion finds direct support from multiple federal decisions and two recent decisions from the Tennessee Court of Appeals. In *Nalawagan v. Dang*, the United States District Court for the Western District of Tennessee ruled that section 29-26-119 "limits damages to costs 'paid or payable.'" No. 06-2745-STA-dkv, 2010 WL 4340797, at *3 (W.D. Tenn. Oct. 27, 2010). Basing its conclusion on the "plain meaning" of the terms of the statute, the court concluded that "it is clear that medical expenses are limited to expenses already paid or such expenses yet to be paid, and not simply the amounts billed." *Id.*; *see also Calaway v. Schucker*, No. 2:02-cv-02715-STA-cgc, 2013 WL 12033182, at *1 (W.D. Tenn. Aug. 12, 2013) (approving of the ruling of *Nalawagan* by limiting a

plaintiff's damages to amounts "paid or payable," and providing that the plaintiff could not recover the "amounts billed," the "gross price," or the "sticker price"); *Guthrie v. Ball*, No. 1:11-cv-333-SKL, 2014 WL 5094140, at *1–2 (E.D. Tenn. Oct. 10, 2014) (also approving of the ruling and rationale of *Nalawagan*).

In addition to these federal decisions, two recent decisions of the Tennessee Court of Appeals provide support for the conclusion that section 29-26-119 only contemplates the recovery of the amount actually paid by Plaintiffs or their insurance. In *Stevens v. State*, No. M2017-01114-COA-R3-CV, 2018 WL 1128476 (Tenn. Ct. App. Feb. 6, 2018), the Court of Appeals considered the question of whether a provision of the Claims Commission Act abrogated the collateral source rule and limited the plaintiffs' recovery to the amounts actually paid. *Id.* at *3. The statute at issue in *Stevens* provided:

> The state will be liable for *actual damages only*. No award shall be made unless the facts found by the commission would entitle the claimant to a judgment in an action at law if the state had been a private individual.

Tenn. Code Ann. § 9-8-307(d) (2017) (emphasis added).

The Court of Appeals held in favor of the plaintiff by construing "actual damages" to mean "compensatory damages." *Stevens*, 2018 WL 1128476, at *3; *see also Estate of Tolbert v. State*, No. M2017-00862-COA-R3-CV, 2018 WL 1124511, at *3 (Tenn. Ct. App. Feb. 28, 2018) (holding the same). The intermediate court explained that "[n]othing in the Claims Commission Act indicates that the General Assembly intended to deviate from the well-recognized common law meaning of 'actual damages.' Thus, the language used in subsection (d) falls far short of the clear expression of legislative intent necessary to abrogate the collateral source rule." *Stevens*, 2018 WL 1128476, at *3. However, the Court of Appeals went further and stated that their "conclusion is buttressed by a comparison of the language used in subsection (d) to the language the General Assembly used to abrogate the collateral source rule in health care liability actions. There, the General Assembly expressly limited recoverable damages to[] 'actual economic losses' . . . ." *Id.* (citation omitted). Thus, it appears the Court of Appeals was of the view that there is a difference between the language of "actual damages" and "actual economic losses suffered by the claimant," such that the latter "abrogate[d] the collateral source rule in health care liability actions." *Id.*

Despite the persuasive authority from these federal and state opinions that directly address the specific issue before us today, the majority opinion cites to other distinguishable cases. *See Nance by Nance v. Westside Hosp.*, 750 S.W.2d 740, 743–44 (Tenn. 1988) (holding that while worker's compensation benefits fall under the phrase "any other source" in section 29-26-119, where "benefits carry a right of subrogation," the plaintiff's losses are not "replaced or indemnified" under the statute); *Hunter v. Ura*, 163

S.W.3d 686, 710–11 (Tenn. 2005) (holding that because an employee deferred a portion of his income to a death benefit program, that deferment qualified under the phrase "insurance purchased in whole or in part, privately and individually"); *Steele v. Ft. Sanders Anesthesia Grp., P.C.*, 897 S.W.2d 270, 282 (Tenn. Ct. App. 1994) (holding that section 29-26-119 "permits a plaintiff to introduce medical expenses when the plaintiff has paid part of the insurance premium"). These cases do not consider the issue on appeal currently before us, do not interpret the language "actual economic losses suffered," and the opinions do not appear to mention whether any health insurance write-offs or discounts were actually involved. Also of significance, the facts and issue in *Hunter* primarily involved a decedent's death benefits, not medical bills. *Hunter*, 163 S.W.3d at 710–11. Overall, *Nance*, *Hunter*, and *Steele* are distinguishable and do not provide meaningful guidance concerning the specific issue before us today.

Although I would conclude that the statute's language is unambiguous, which is sufficient to end the analysis at that point, *see Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004) (providing that when "the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use"), the legislative purpose of the Medical Malpractice Review Board and Claims Act of 1975 ("Medical Malpractice Act") also lends support to the conclusion that the statute abrogates the collateral source rule. *See Yebuah*, 624 S.W.3d at 486 ("We look to . . . 'the wrong or evil which [a statute] seeks to remedy or prevent[] and the purpose sought to be accomplished in its enactment." (quoting *Spires*, 539 S.W.3d at 143)).

As *Dedmon* highlights, the "purpose of [the Medical Malpractice Act] was to contain the cost of medical malpractice litigation and control the cost of health care." 535 S.W.3d at 445–46. Indeed, not long after the passage of the Medical Malpractice Act, this Court highlighted that "this state and the nation were in the throes of what was popularly described as a 'medical malpractice insurance crisis.' Because of alleged increasing numbers of claims, insurance companies had grown reluctant to write medical malpractice policies. Where policies were available, premiums had risen astronomically." *Harrison v. Schrader*, 569 S.W.2d 822, 826 (Tenn. 1978). Demonstrating the crisis,

> [a] special report of a committee established under the Secretary of Health, Education and Welfare, issued in 1973, indicated that between 1960 and 1970 insurance premiums rose on a national average of 540.8% [f]or physicians and 949.2% [f]or surgeons. In Tennessee alone[,] the increase of insurance premiums between 1968 and 1975 was approximately 700%.

*Id.* at n.5. Therefore, based on the state of affairs that existed around the time of the passage of section 29-26-119, it is more than conceivable that the legislature intended to abrogate the collateral source rule by passing legislation aimed at combating the rising costs of malpractice insurance premiums and health care costs in general. The "purpose[s] sought

to be accomplished" by section 29-26-119 are certainly advanced by forbidding recovery of any costs not actually incurred by patients or their insurance. *Yebuah*, 624 S.W.3d at 486 (quoting *Spires*, 539 S.W.3d at 143).

The majority opinion asserts that the legislature likely "would not have had in mind the current situation, where HMOs contractually require health care providers to discount fees and pay insureds' medical expenses partly by requiring providers to forgive a portion of them." Indeed, that may be true. Nevertheless, we must still apply the plain language of section 29-26-119 to the facts of this case that involve modern-day managed care insurance practices. While a reasonable reader of this statute in 1975 likely would not have envisioned modern-day health insurance billing, he or she would have understood "actual economic losses suffered" to mean that a plaintiff cannot recover losses that are never sustained.

In sum, when considering the plain meaning of this statute in combination with the legislative purpose of the Medical Malpractice Act, "actual economic losses suffered" must mean that a plaintiff may only recover losses that are actually sustained. Although statutes in derogation of the common law must be "strictly construed," the "express terms" of this statute simply do not permit recovery of full, undiscounted medical bills that neither a plaintiff nor insurance are ever required to pay. *Moreno*, 479 S.W.3d at 809 (quoting *Doyle*, 49 S.W.3d at 858).

## III.

For the reasons stated above, I respectfully dissent from the majority's decision to affirm the trial court's pretrial order involving Tennessee Code Annotated section 29-26-119.

_____
ROGER A. PAGE, CHIEF JUSTICE