# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 2, 2021

## NANDIGAM NEUROLOGY, PLC ET AL. v. KELLY BEAVERS

**Appeal from the General Sessions Court for Wilson County**
**No. 2020-CV-152    Barry Tatum, Judge**

_____

### No. M2020-00553-COA-R3-CV
_____

This case arises from a defamation and false light lawsuit filed in the General Sessions Court for Wilson County (the "general sessions court"). The action was dismissed pursuant to the Tennessee Public Participation Act (the "TPPA") and the plaintiffs appealed the dismissal to the Circuit Court for Wilson County (the "circuit court"). After concluding that it lacked subject matter jurisdiction to hear the appeal, the circuit court transferred the case to this Court. On appeal, the parties dispute whether this Court has subject matter jurisdiction, and the defendant argues that the ruling of the general sessions court should be affirmed. We conclude that this Court has subject matter jurisdiction to decide this appeal and, discerning no error, we affirm the decision of the general sessions court dismissing the plaintiffs' legal action pursuant to the TPPA.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Angello L. Huong, Lebanon, Tennessee, for the appellants, Nandigam Neurology, PLC, and Dr. Kaveer Nandigam.

Daniel A. Horwitz, Nashville, Tennessee, and Sarah L. Martin, Nashville, Tennessee, for the appellee, Kelly Beavers.

## OPINION

### I. FACTUAL & PROCEDURAL BACKGROUND

This case centers on the recently enacted TPPA, found at Tennessee Code Annotated section 20-17-101 et. seq. Kelly Beavers ("Defendant" or "Appellee") and her

father visited the office of Dr. Kaveer Nandigam ("Dr. Nandigam"), a neurologist, in early November 2019. Although the details of the visit are disputed, Dr. Nandigam and Defendant agree that there was a disagreement over whether Defendant could make a video recording of the appointment with her phone. According to Defendant, she often does this at her father's doctor's appointments because he has neurological and memory issues. According to Dr. Nandigam, however, videotaping a doctor's appointment violates his office policy. In any event, after the appointment, Defendant posted an online Yelp! review regarding Dr. Nandigam and his practice, Nandigam Neurology, PLC (together with Dr. Nandigam, "Plaintiffs" or "Appellants"). Defendant's review stated in its entirety:

> This "Dr's" behavior today was totally unprofessional and unethical to put it mildly. I will be reporting him to the State of TN Medical Review Board and be filing a formal complaint. How this guy is in business is beyond me. Since when did they start allowing Doctors, to throw a complete temper tantrum in front of Patients and slam things when they get upset? He does not belong in the medical field at all.

On November 27, 2019, Nandigam Neurology initiated the first action against Defendant in the circuit court. Dr. Nandigam was not listed as a plaintiff in that action. Nandigam Neurology claimed causes of action for defamation, libel, false light, and conspiracy and alleged, *inter alia*, that Defendant's Yelp! review contained "false, disparaging, and misleading statements." Defendant responded by filing a motion to dismiss pursuant to the TPPA, specifically sub-section 20-17-104(a). Defendant averred that Nandigam Neurology's lawsuit was a strategic lawsuit against public participation, meaning the suit was intended to deter Defendant's lawful exercise of her right to free speech and that the lawsuit should be dismissed. Before the circuit court could rule on Defendant's petition, however, Nandigam Neurology filed a notice of voluntary dismissal.

Soon thereafter, on January 21, 2020, Plaintiffs filed a new action in the general sessions court, this time listing both Nandigam Neurology and Dr. Nandigam as plaintiffs. The summons alleged "[d]efamation as to Nandigam Neurology, PLC and [Dr. Nandigam]; and [f]alse light invasion of privacy as to [Dr. Nandigam]."[1] Again, Defendant responded by filing a petition to dismiss Plaintiffs' case in its entirety. First, Defendant argued that Plaintiffs failed to state any claim for which relief could be granted, pointing out that Plaintiffs failed to plead the substance of any statement over which they complained. Defendant also averred that her statement was not defamatory because it expressed only opinions and rhetorical hyperbole. Defendant again relied on the TPPA in asserting that her review was a statement made in connection with a matter of public concern and that Plaintiffs' lawsuit "qualifies as one filed in response to [Defendant's] exercise of the right

---

[1] The action that originated in the general sessions court on January 21, 2020 is the action at issue in this appeal. While the procedural history of the first action filed in circuit court is pertinent to our discussion, we express no opinion regarding that case.

to free speech[.]" Defendant requested that the suit be dismissed, that she be awarded costs and attorney's fees, and that the general sessions court sanction Plaintiffs pursuant to Tennessee Code Annotated section 20-17-107. Attached to Defendant's petition to dismiss was an affidavit executed by Defendant which provided that her Yelp! review was based on her personal observations and that she had no reason to believe any of the statements in the review were false.

Plaintiffs answered Defendant's petition for dismissal on January 31, 2020, asserting that section 20-17-101 et. seq. could not apply to their claims because "it is a rule of [c]ivil [p]rocedure, and the rules of [c]ivil [p]rocedure do not apply in general sessions court." Plaintiffs further argued that they "[met] the pleading requirements for general sessions court" and that they were entitled to a hearing at which they would provide evidence of their damages. Plaintiffs also asserted that because "there is no discovery in general sessions court, . . . no affidavit by Plaintiffs or Defendant is necessary or appropriate." As such, Plaintiffs' response to Defendant's TPPA petition for dismissal did not address the substance of Defendant's argument nor did Plaintiffs offer any countervailing proof in response to Defendant's affidavit.

The general sessions court held a hearing on Defendant's TPPA petition on February 6, 2020. While Defendant reiterated the argument that her Yelp! review was not defamatory as a matter of law, Plaintiffs maintained that "there's no discovery in General Sessions Court[,]" and that the court should "go ahead and just have the trial." Rather than respond to the merits of Defendant's petition at the February 6, 2020 hearing, Plaintiffs' counsel relied solely on the theory that the TPPA is a rule of civil procedure that does not apply in general sessions court. On the other hand, Defendant maintained that the TPPA is a duly enacted Tennessee statute that, by its terms, applies to all legal actions, and that the general sessions court should rule on the petition and dismiss Plaintiffs' case. The general sessions court took the petition under advisement and informed the parties that a ruling would be announced on February 13, 2020, one week later.

On February 12, 2020, six days after the hearing on Defendant's TPPA petition, Plaintiffs filed a pleading titled "Plaintiff's Supplemental Answer to Defendant's § 20-17-104(a) Motion to Dismiss[.]" In this pleading, Plaintiffs addressed the substance of Defendant's TPPA petition for the first time, arguing that Plaintiffs could prove a prima facie case for defamation and false light. Specifically, Plaintiffs asserted that the use of ironic quotes in Defendant's Yelp! review was defamatory because the quotes suggest Dr. Nandigam is not a real doctor. Plaintiffs further asserted that the allegations that Dr. Nandigam "threw a temper tantrum" and "slammed things" were defamatory because these allegations amount to facts as opposed to opinion or hyperbole. In support of their contention that they could plead their prima facie case, Plaintiffs attached to their supplemental answer an affidavit of Dr. Nandigam, which provided his version of the circumstances surrounding Defendant's visit to Nandigam Neurology in November 2019.

The parties appeared in the general sessions court the following day, February 13, 2020, to hear the ruling on Defendant's TPPA petition. At this hearing, Defendant argued that Plaintiffs' supplemental answer was untimely pursuant to section 20-17-104(c), which provides that a response to a TPPA petition to dismiss "may be served and filed by the opposing party no less than five (5) days before the hearing or, in the court's discretion, at any earlier time that the court deems proper." As Plaintiffs' supplemental response and affidavit were not filed until nearly a week after the hearing on Defendant's petition and on the eve of the general sessions court's scheduled ruling, Defendant urged that Plaintiffs' response should not be considered. Defendant therefore averred that Plaintiffs had offered no countervailing proof in response to Defendant's TPPA petition and that Plaintiffs' case must be dismissed. The general sessions court acknowledged that it had only received Plaintiffs' response the prior afternoon and ruled that: (1) Plaintiffs failed to state a claim for defamation because they did not plead the substance of the statement at issue; (2) the TPPA applies in general sessions court because it is a Tennessee statute; and (3) Defendant's petition for dismissal was granted due to the "lack of facts" offered by Plaintiffs. While the notation on the general sessions warrant indicates that the case was dismissed pursuant to the TPPA, the order did not resolve Defendant's requested costs, attorney's fees, or sanctions pursuant to section 20-17-107. Defendant informed the court, however, that she would be filing an itemized petition for her attorney's fees.

Plaintiffs appealed to circuit court on February 18, 2020. Defendant responded by filing a motion to dismiss for failure to state a claim and another TPPA petition to dismiss. As a threshold issue, however, Defendant also asserted that Plaintiffs had appealed to the wrong court because the general sessions order dismissing Plaintiffs' case was appealable only to the Court of Appeals. Defendant's argument in this regard was two-fold. First, Defendant noted the language of section 20-17-106, which provides that a trial court's "order dismissing or refusing to dismiss a legal action pursuant to a petition filed under [the TPPA] is immediately appealable as a matter of right to the court of appeals." Accordingly, Defendant averred that "only the Court of Appeals may adjudicate the Plaintiffs' appeal of the General Sessions Court's February 13, 2020 Order[.]" Alternatively, Defendant argued that the general sessions court's order was interlocutory insofar as it did not resolve the issue of attorney's fees and that the circuit court therefore lacked jurisdiction to review that judgment. Plaintiffs filed a written response to Defendant's motion but made no argument regarding whether the circuit court had subject matter jurisdiction.

The parties agree that the circuit court held a telephonic hearing on March 24, 2020; however, a transcript of this hearing does not appear in the record. On March 30, 2020, the circuit court entered an order transferring Plaintiffs' notice of appeal to this Court, finding that pursuant to section 20-17-106, the circuit court lacked subject matter jurisdiction over the case. The transfer order was received by this Court on April 2, 2020. On April 14, 2020, Defendant filed a notice of cross-appeal.

- 4 -

## II. ISSUES

Plaintiffs raise the following issues for review:

1. Whether the circuit court erred in concluding that it lacked subject matter jurisdiction over the appeal from general sessions court and in transferring the case to this Court.

2. Whether an appeal from general sessions court to circuit court is reviewed de novo.

In her posture as appellee and cross-appellant, Defendant raises the following issues:

3. Whether Plaintiffs waived their right to challenge the circuit court's transfer order.

4. Whether this Court is the only court with jurisdiction to adjudicate the appeal from general sessions court.

5. Whether the general sessions court correctly dismissed Plaintiffs' claims pursuant to the TPPA.

6. Whether this Court should recognize that Tennessee's presumption of falsity doctrine in defamation cases has been abrogated.

7. Whether Defendant should be awarded attorney's fees on appeal.

## III. DISCUSSION

### A. Standard of Review

This case presents issues of law. First, we must determine whether the circuit court properly concluded that it lacked subject matter jurisdiction. "Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo." *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712–13 (Tenn. 2012) (quoting *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)). Additionally, this case requires us to construe the TPPA. "[W]hen an issue on appeal requires statutory interpretation, we review the trial court's decision de novo with no presumption of correctness." *Nationwide Mut. Fire Ins. Co. v. Memphis Light, Gas and Water*, 578 S.W.3d 26, 30 (Tenn. Ct. App. 2018) (citing *Wade v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 469 S.W.3d 54, 58 (Tenn. Ct. App. 2015)). The polestar of statutory interpretation is the intent and purpose of the legislature in enacting the statute. *Nationwide*, 578 S.W.3d at 30. We

begin by "reading the words of the statutes using their plain and ordinary meaning in the context in which the words appear." *Id.* When the language is clear and unambiguous, we look no further than the language of the statute itself to determine its meaning. *Id.*

## B. Anti-SLAPP Statutes Generally

The instant case centers on the TPPA, which is more commonly known as an "anti-SLAPP" statute. *See* Todd Hambidge, et. al., *Speak Up. Tennessee's New Anti-SLAPP Statute Provides Extra Protections to Constitutional Rights*, 55 TENN. B.J. 14 (Sept. 2019) ("Tennessee recently adopted a Strategic Lawsuit Against Public Participation ('Anti-SLAPP') statute."). To better understand the issues before us, a general overview of anti-SLAPP legislation is beneficial. The term "SLAPP" stands for "strategic lawsuits against public participation," meaning lawsuits which might be viewed as "discouraging the exercise of constitutional rights, often intended to silence speech in opposition to monied interests rather than to vindicate a plaintiff's right." *Id.* at 14, 15; *see also Sandholm v. Kuecker*, 962 N.E.2d 418, 427 (Ill. 2012) ("'SLAPPs . . . are lawsuits aimed at preventing citizens from exercising their political rights or punishing those who have done so.'" (quoting *Wright Dev. Group, LLC v. Walsh*, 939 N.E.2d 389, 395 (2010))).[2] Regarding SLAPP lawsuits generally, the Illinois Supreme Court has aptly explained:

> SLAPPs use the threat of money damages or the prospect of the cost of defending against the suits to silence citizen participation. The paradigm SLAPP suit is "one filed by developers, unhappy with public protest over a proposed development, filed against leading critics in order to silence criticism of the proposed development." *Westfield Partners, Ltd. v. Hogan*, 740 F. Supp. 523, 525 (N.D. Ill. 1990). A SLAPP is "based upon nothing more than defendants' exercise of their right, under the first amendment, to petition the government for a redress of grievances." *Hogan*, 740 F. Supp. at 525. SLAPPs are, by definition, meritless. John C. Barker, *Common–Law and Statutory Solutions to the Problem of SLAPPs*, 26 Loy. L.A. L.Rev. 395, 396 (1993). Plaintiffs in SLAPP suits do not intend to win but rather to chill a defendant's speech or protest activity and discourage opposition by others through delay, expense, and distraction. *Id.* at 403–05. "In fact, defendants win eighty to ninety percent of all SLAPP suits litigated on the merits." *Id.* at 406. While the case is being litigated in the courts, however, defendants are forced to expend funds on litigation costs and attorney fees and may be discouraged from continuing their protest activities. *Id.* at 404–06. "The idea is that the SLAPP plaintiff's goals are achieved through the ancillary effects of the lawsuit itself on the defendant, not through an adjudication on the merits. Therefore, the

---

[2] Because there are not yet any Tennessee cases addressing the TPPA, we look to the case law of our sister states for helpful authority. *Ottinger v. Stooksbury*, 206 S.W.3d 73, 79 (Tenn. Ct. App. 2006).

- 6 -

plaintiff's choice of what cause of action to plead matters little." Mark J. Sobczak, Comment, *SLAPPed in Illinois: The Scope and Applicability of the Illinois Citizen Participation Act*, 28 N. Ill. U.L. Rev. 559, 561 (2008). SLAPPs "masquerade as ordinary lawsuits" and may include myriad causes of action, including defamation, interference with contractual rights or prospective economic advantage, and malicious prosecution. Kathryn W. Tate, *California's Anti–SLAPP Legislation: A Summary of and Commentary on Its Operation and Scope*, 33 Loy. L.A. L.Rev. 801, 804–05 (2000). Because winning is not a SLAPP plaintiff's primary motivation, the existing safeguards to prevent meritless claims from prevailing were seen as inadequate, prompting many states to enact anti-SLAPP legislation. *Id.* at 805. These statutory schemes commonly provide for expedited judicial review, summary dismissal, and recovery of attorney fees for the party who has been "SLAPPed." *Id.*

*Sandholm*, 962 N.E.2d at 427–28 (some internal citations omitted); *see also Steidley v. Cmty. Newspaper Holdings, Inc.*, 383 P.3d 780, 786 (Okla. Civ. App. 2016) (citations omitted) ("SLAPP suits are designed to intimidate the petitioners into dropping their initial petitions due to the expense and fear of extended litigation. Libel is a common cause of action in SLAPP suits.").

Anti-SLAPP statutes have arisen in response to SLAPP lawsuits. *See* Hambidge, *supra*, at 15 ("[A]nti-SLAPP statutes are not a recent development[;] [s]tates began enacting anti-SLAPP statutes in the 1980s in response to an increasing number of lawsuits that were filed for the purpose of discouraging the exercise of constitutional rights."); *see also Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 147 (2nd Cir. 2013) ("[T]he point of the anti-SLAPP statute is that you have a right not to be dragged through the courts because you exercised your constitutional rights."). Over thirty states now have anti-SLAPP statutes in place, and while the particular language varies, the stated purpose of anti-SLAPP legislation is consistent. *See, e.g.*, Ga. Code Ann. § 9-11-11.1(a) ("[I]t is in the public interest to encourage participation by the citizens of Georgia in matters of public significance and public interest through the exercise of their constitutional rights of petition and freedom of speech. . . [T]he valid exercise of the constitutional rights of petition and freedom of speech should not be chilled through abuse of the judicial process."); Ark. Code Ann. § 16-63-501 ("[I]t is in the public interest to encourage participation by the citizens of the State of Arkansas in matters of public significance through the exercise of their constitutional rights of freedom of speech . . . Strategic lawsuits against political participation can effectively punish concerned citizens for exercising the constitutional right to speak and petition the government for a redress of grievances."); Colo. Rev. Stat. § 13-20-1101 ("[I]t is in the public interest to encourage continued participation in matters of public significance and [] this participation should not be chilled through abuse of the judicial process.").

## C. The TPPA

In that vein, the stated purpose of the TPPA, which was enacted by the General Assembly on July 1, 2019, is found at Tennessee Code Annotated section 20-17-102:

> The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury. This chapter is consistent with and necessary to implement the rights protected by Constitution of Tennessee, Article I, §§ 19 and 23, as well as by the First Amendment to the United States Constitution, and shall be construed broadly to effectuate its purposes and intent.

The TPPA is "intended to provide an additional substantive remedy to protect the constitutional rights of parties and to supplement any remedies which are otherwise available to those parties under common law, statutory law, or constitutional law or under the Tennessee Rules of Civil Procedure." Tenn. Code Ann. § 20-17-109.

Under the TPPA, "[i]f a legal action is filed in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may petition the court to dismiss the legal action." *Id.* § 20-17-104(a). The TPPA defines the "[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern or religious expression that falls within the protection of the United States Constitution or the Tennessee Constitution[.]" *Id.* § 20-17-103(3). A "matter of public concern" under the TPPA can include, *inter alia*, "an issue related to . . . [h]ealth or safety[,]" "[a] good, product, or service in the marketplace[,]" or "[a]ny other matter deemed by a court to involve a matter of public concern." *Id.* § 20-17-103(6)(E), (G).

Once a TPPA petition is filed, "[a] response to the petition, including any opposing affidavits, may be served and filed by the opposing party no less than five (5) days before the hearing[,]" and "all discovery in the legal action is stayed upon the filing of a petition under" the TPPA. *Id.* § 20-17-104(c), (d). If the party petitioning for dismissal makes a "prima facie case that [the] legal action against the petitioning party is based on, relates to, or is in response to that party's exercise of the right to free speech, right to petition, or right of association[,]" the court "shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim in the legal action." *Id.* § 20-17-105(a), (b). Notwithstanding subsection 105(b), "the court shall dismiss the legal action if the petitioning party establishes a valid defense to the claims in the legal action." *Id.* § 20-17-105(c). When considering a petition filed under the TPPA, the court may consider "supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based and on other admissible evidence presented by the

parties." *Id.* § 20-17-105(d).

If the court dismisses a legal action pursuant to a TPPA petition, the petitioning party shall be awarded "court costs, reasonable attorney's fees, discretionary costs, and other expenses incurred in filing and prevailing upon the petition[,]" and, under certain circumstances, the party who brought the lawsuit may face sanctions. *Id.* § 20-17-107(a)(1), (2). Finally, the TPPA also provides that:

> [t]he court's order dismissing or refusing to dismiss a legal action pursuant to a petition filed under this chapter is immediately appealable as a matter of right to the court of appeals. The Tennessee Rules of Appellate Procedure applicable to appeals as a matter of right governs such appeals.

*Id.* § 20-17-106.

Accordingly, while there is no Tennessee case law construing the TPPA as of yet, the statute is, on its face, consistent with the anti-SLAPP legislation of many other states.

### D. Subject Matter Jurisdiction

Bearing this framework in mind, we return to the present case. As a threshold matter, there is disagreement as to whether this Court has subject matter jurisdiction over this appeal. "Subject matter jurisdiction relates to a court's authority to adjudicate a particular type of case or controversy brought before it." *In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012) (citing *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004)). As orders and judgments entered by courts lacking subject matter jurisdiction are void, "issues regarding subject matter jurisdiction should be considered as a threshold inquiry" and "resolved at the earliest possible opportunity." *Estate of Trigg*, 368 S.W.3d at 489 (citing *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012); *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955)).

The instant case raises several questions implicating subject matter jurisdiction. First, we must consider whether the finality of the general sessions order affects the present appeal. Second, we must determine whether Tennessee Code Annotated section 20-17-106 confers upon this Court exclusive jurisdiction over appeals brought pursuant to the TPPA. Finally, Defendant asserts that Plaintiffs did not file a timely notice of appeal to this Court. We address each of these issues in turn.

#### 1. Finality of the general sessions order dismissing Plaintiffs' lawsuit

The dispute over the finality of the general sessions order granting Defendant's TPPA petition arises from the fact that the order makes no mention of attorney's fees,

despite the fact that Defendant requested such fees in her petition.[3]  Generally, "unless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments only." *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990) (citing *Aetna Cas. & Sur. Co. v. Miller*, 491 S.W.2d 85 (Tenn. 1973)); *see also* Tenn. R. App. P. 3(a).  A final judgment adjudicates all "claims, rights, and liabilities of all the parties," *Discover Bank v. Morgan*, 363 S.W.3d 479, 488 n.17 (Tenn. 2012), and "resolves all the issues in the case, leaving nothing else for the trial court to do." *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (internal quotations omitted). Under some circumstances, it is true that a trial court's failure to rule on a request for attorney's fees renders an order nonfinal and deprives this Court of subject matter jurisdiction.  *See, e.g.*, *E Sols. for Buildings, LLC v. Knestrick Contractor, Inc.*, No. M2017-00732-COA-R3-CV, 2018 WL 1831116 (Tenn. Ct. App. Apr. 17, 2018) (appeal dismissed due to outstanding request for attorney's fees pursuant to a contractual provision); *City of Jackson v. Hersh*, No. W2008-02360-COA-R3-CV, 2009 WL 2601380, at *4 (Tenn. Ct. App. Aug. 25, 2009) (collecting cases and noting that "this Court has concluded on several occasions that an order that fails to address an outstanding request for attorney's fees is not final").

Nonetheless, there are circumstances under which the absence of a ruling on attorney's fees or other outstanding issues does not affect the appealability of a judgment; however, these exceptions are created by rule or statute.  *See, e.g.*, Tenn. R. App. P. 9 (addressing interlocutory appeals); Tenn. R. App. P. 10 (addressing extraordinary appeals); Tenn. R. Civ. P. 54.02 (allowing courts to direct entry of a final judgment as to one or more but fewer than all of the claims or parties); *see also Levitt, Hamilton, and Rothstein, LLC v. Asfour*, 587 S.W.3d 1, 8 n.7 (Tenn. Ct. App. 2019) (noting that exceptions to the final judgment rule are "creatures of statute").  A helpful example is found at Tennessee Code Annotated section 29-5-319, which is somewhat similar to section 20-17-106 in that it provides, *inter alia*, for an immediate appeal in the event a court denies a motion to compel arbitration.  *See* Tenn. Code Ann. § 29-5-319(a)(1) ("An appeal may be taken from . . . [a]n order denying an application to compel arbitration made under § 29-5-303[.]").  This Court has interpreted section 29-5-319 to mean that an immediate appeal to this Court may be taken as soon as a motion to compel arbitration is denied, notwithstanding whether other issues remain. *See Altom v. Capital Resorts Group, LLC*, No. E2019-00739-COA-R3-CV, 2020 WL 3400680, at *4 (Tenn. Ct. App. June 19, 2020) ("[D]eclining to compel arbitration and ruling that the issues would be decided by the court rather than an arbitrator . . . clearly constituted an order 'denying an application to compel arbitration' as contemplated   by Tennessee Code Annotated § 29-5-319.   Such   order   is   therefore appealable to this Court."); *see also Person v. Kindred Healthcare, Inc.*, No. W2009-01918-COA-R3-CV, 2010 WL 1838014, at *3 (Tenn. Ct. App. May 7, 2010) ("Tennessee Code Annotated § 29-5-319 permits  an  immediate  appeal  from  an  order

---

[3] An award of costs and attorney's fees is mandatory in the event the court grants a TPPA petition to dismiss.  *See* Tenn. Code Ann. § 20-17-107(a)(1).

- 10 -

denying an application to compel arbitration under § 29-5-303.").

Although not precisely the same, another instructive example is found at Tennessee Code Annotated section 20-12-119(c), which provides *inter alia* that "where a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief may be granted, the court shall award the party or parties against whom the dismissed claims were pending" reasonable costs and attorney's fees. § 20-12-119(c)(1). That statute further provides that "[a]n award of costs pursuant to this subsection (c) shall be made only after all appeals of the issue of the granting of the motion to dismiss have been exhausted[.]" *Id.* § 20-12-119(c)(3). Based on the foregoing language, we recently concluded that this Court has subject matter jurisdiction to review a trial court's decision on a Rule 12.02(6) dismissal, despite the outstanding issue of recoverable attorney's fees, when those fees are awarded by virtue of section 20-12-119(c). *Irvin v. Green Wise Homes, LLC*, No. M2019-02232-COA-R3-CV, 2021 WL 709782, at *5–6 (Tenn. Ct. App. Feb. 24, 2021) (citing *Donovan v. Hastings*, No. M2019-01396-COA-R3-CV, 2020 WL 6390134, at *3 (Tenn. Ct. App. Oct. 30, 2020)).

The foregoing examples highlight the principle that appellate courts have jurisdiction over final judgments only *unless* a rule or statute provides otherwise, and that statutes providing for expedited appellate review are not an aberration. *Bayberry Assocs.*, 783 S.W.2d at 559 (citing *Aetna Cas. & Sur. Co.*, 491 S.W.2d 85). The language of section 20-17-106 is in keeping with other statutory and rule-based exceptions to the final judgment rule, particularly Tennessee Code Annotated section 29-5-319. To reiterate, section 20-17-106 provides that a court order "dismissing or refusing to dismiss a legal action pursuant to a petition filed under [the TPPA] is immediately appealable as a matter of right to the court of appeals." The word "immediate" indicates that a party's right to appeal the disposition of a TPPA petition is triggered not by the eventual entry of a judgment resolving the entire case, but rather only by a ruling on the petition. *See Altom*, 2020 WL 3400680, at *4. This conclusion is buttressed by the fact that section 106 also provides that an immediate appeal may be taken when a trial court "**refus[es]** to dismiss a legal action pursuant to a [TPPA] petition." (Emphasis added). A trial court's denial of a TPPA petition to dismiss would necessarily constitute an interlocutory order inasmuch as the case would remain pending. In this sense, the statute unambiguously contemplates that orders involving the disposition of a TPPA petition are "immediately appealable," regardless of whether the order is final or interim. Tenn. Code Ann. § 20-17-106.

This conclusion is consistent with the intent and purpose of the TPPA and anti-SLAPP statutes generally. *See id.* § 20-17-102; *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 845–46 (Tenn. 2019) ("In all cases involving statutory construction, judges must look not only at 'the language of the statute,' but also 'its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment.'" (quoting *Spires v.*

*Simpson*, 539 S.W.3d 134, 143 (Tenn. 2017))); *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010) ("When courts are called upon to construe a statute, their goal is to give full effect to the General Assembly's purpose, stopping just short of exceeding its intended scope." (citing *Larsen–Ball v. Ball*, 301 S.W.3d 228, 232 (Tenn. 2010))). Indeed, "the point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights[;] . . . [t]he protections afforded by the anti-SLAPP statute against the harassment and burdens of litigation are in large measure lost if the petitioner is forced to litigate a case to its conclusion before obtaining a definitive judgment through the appellate process." *Liberty Synergistics*, 718 F.3d at 147–48 (emphasis in original).[4]

Here, the general sessions order itself plainly satisfies the statutory definition of an "immediately appealable" order because it is an "order dismissing . . . a legal action pursuant to a petition filed under [the TPPA]." Tenn. Code Ann. § 20-17-106. Under these circumstances, the fact that the general sessions court did not address Defendant's request for attorney's fees, costs, or sanctions[5] is inapposite in light of the clear import of the statute. In enacting section 20-17-106, the General Assembly created a statutory exception to the final judgment rule and we are not inclined to second-guess that decision. *See Knox Cnty. Educ. Ass'n v. Knox Cnty. Bd. of Educ.*, 60 S.W.3d 65, 74 (Tenn. Ct. App. 2001) ("[I]t is not for the courts to question the wisdom of a legislative act."). Rather, "[w]e must take the TPPA as [we] find [it]," *Id.* (quoting *Tennessee Mfr'd Housing Ass'n v. Metro. Gov't*, 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990)), while construing it in a manner that furthers "the purpose sought to be accomplished in its enactment." *Coffee Cnty.*, 574 S.W.3d at 845–46.

Accordingly, we conclude that this Court does not lack subject matter jurisdiction

---

[4] We find further support for our conclusion in case law from other jurisdictions. Having thoroughly reviewed the anti-SLAPP statutes of other states, inclusion of a procedure that allows for expedited appellate review is a common trend and is regarded as furthering the overall purpose of anti-SLAPP legislation. *See, e.g.*, *Reyes v. Kruger*, 269 Cal. Rptr. 3d 549, 557 (Cal. Ct. App. 2020) (concluding that order amounted to an "order granting or denying a special motion to strike" under California's anti-SLAPP statute and was therefore appealable, notwithstanding the fact that the issue of attorney's fees was unaddressed when the order was entered); *Grogan v. City of Dawsonville*, 823 S.E.2d 763, 767 (Ga. 2019) (outstanding claim for attorney's fees did not affect appellate court's subject matter jurisdiction where appeal was taken pursuant to anti-SLAPP statute allowing for a "direct appeal" of an order granting or dismissing a motion to strike under that chapter); *Cordova v. Cline*, 396 P.3d 159, 165 (N.M. 2017) (concluding that final order was not required for direct appeal under anti-SLAPP statute and noting that such procedure furthers the purpose of the anti-SLAPP statute and that such claims should be subject to prompt dismissal or judgment to prevent abuse of legal process); *Steidley*, 383 P.3d at 782 (citing 12 Okl. Stat. Ann. §1437) (recognizing that Oklahoma anti-SLAPP statute allows a specific right to appeal the denial of a motion to dismiss filed under that chapter regardless of whether the order is final or interlocutory).

[5] The general sessions court also left unresolved the issues of costs and sanctions. Because of all the reasons addressed herein, we also conclude that neither of these additional issues affects this Court's subject matter jurisdiction.

over this appeal due to Defendant's outstanding request for attorney's fees.

### 2. Jurisdiction over TPPA appeals

Next, the parties dispute whether the circuit court properly found that it lacked subject matter jurisdiction over Plaintiffs' appeal from general sessions court. While Plaintiffs maintain that they are entitled to a de novo hearing in circuit court and should not be forced to litigate in this Court, Defendant argues that under section 20-17-106, the Court of Appeals is the only court that has subject matter jurisdiction over the present case.

Once again, the pertinent portion of the TPPA is section 20-17-106, specifically the phrase "is immediately appealable as a matter of right to the court of appeals." This section also provides that "[t]he Tennessee Rules of Appellate Procedure applicable to appeals as a matter of right governs such appeals." According to Plaintiffs, appeal to this Court is permissive rather than mandatory, and they urge that section 106 "is not the only exclusive and mandatory avenue afforded to the [Plaintiffs]." Plaintiffs rely on Tennessee Code Annotated section 27-5-108[6] to further assert that they "should not be forced into pursuing this matter in the Court of Appeals if they do not desire to do so." On the other hand, Defendant urges that the circuit court properly concluded that it lacked subject matter jurisdiction for multiple reasons.

First, Defendant asserts that although the absence of a ruling on attorney's fees does not affect the appealability of the general sessions court order to this Court in light of section 20-17-106, the order is still interlocutory and cannot be appealed to circuit court because no rule or statute provides as much. *See Wells Fargo Bank, N.A. v. Dorris*, 556 S.W.3d 745, 753–54 (Tenn. Ct. App. 2017) (noting that the same rules of finality apply to appeals from general sessions court to circuit court); *U.S. Bank Nat. Ass'n v. Rzezutko*, No. E2011-00058-COA-R3-CV, 2011 WL 5051428, at *3 (Tenn. Ct. App. Oct. 25, 2011) (same). Alternatively, Defendant avers that section 20-17-106 confers exclusive jurisdiction over TPPA appeals on this Court regardless of whether the trial court's order is final or interlocutory, and that such an interpretation "comports with the General Assembly's intent in enacting the TPPA." Defendant urges that the TPPA "requires that litigants like the Plaintiffs be deterred from heaping litigation costs upon defendants in General Sessions Court," rather than being allowed to "restart SLAPP litigation anew" by seeking a de novo hearing in circuit court followed by an appeal to this Court. Having thoroughly reviewed the TPPA and the history of its enactment, we are persuaded by the latter of Defendant's two arguments.

As we have already established, section 20-17-106 allows immediate appeal of an

---

[6] Section 27-5-108(a)(1) explains that "[a]ny party may appeal from a decision of the general sessions court to the circuit court of the county within a period of ten (10) days on complying with this chapter."

order disposing of a TPPA petition, notwithstanding whether other issues remain. The essence of the dispute now before us then is whether the phrase "is immediately appealable as a matter of right to the court appeals" requires such appeals arising in general sessions court to be heard by this Court, or leaves open the possibility of appeal to circuit court pursuant to section 27-5-108. As we perceive it, however, the language of section 20-17-106 itself does not unambiguously answer this particular question. At first blush, the use of the term "*is* immediately appealable," rather than "*shall* be immediately appealable" appears to support Plaintiffs' argument, as the term "shall" tends to indicate an intention that the requirement is mandatory. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012) (citing *Bellamy v. Cracker Barrel Old Country Store, Inc.*, 302 S.W.3d 278, 281 (Tenn. 2009)). Additionally, as Plaintiffs point out, the drafters of the TPPA could have specified in section 106 that any appeal under that section is immediately appealable "exclusively" to the court of appeals. By the same token, Defendant notes that to the extent the drafters wished to provide litigants the option of an immediate appeal to circuit court under these circumstances, the inclusion of the phrase "to the court of appeals" is confounding. Further, the second clause of section 106 provides that the Rules of Appellate Procedure govern "appeals as a matter of right" arising under the TPPA. Because the Rules of Appellate Procedure do not apply in circuit court, *see* Tenn. R. App. P. 1, this portion of section 106 appears to support Defendant's contention that appeals regarding the disposition of a TPPA petition belong exclusively in this Court.

Our inquiry does not end here, however, as we do not "put on blinders to *all* considerations outside the specific text in question." *Coffee Cnty.*, 574 S.W.3d at 845 (emphasis in original). Rather, we also examine "the subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." *Id.* at 845–46 (quoting *Spires*, 539 S.W.3d at 143). Further, when determining whether a provision is permissive or mandatory, which we must do here, our "prime object is to ascertain the legislative intent from a consideration of the entire statute, its nature, its object, and the consequences that would result from construing it one way or the other[.]" *Baker v. Seal*, 694 S.W.2d 948, 951 (Tenn. Ct. App. 1984) (citing *Stiner v. Powells Hardware Co.*, 168 Tenn. 99, 75 S.W.2d 406 (1934)).

Accordingly, the stated purpose of the TPPA and the circumstances giving rise to its enactment are relevant here. *See Robinson v. Fulliton*, 140 S.W.3d 312, 321 (Tenn. Ct. App. 2003) (noting that "reliable guides" for construing a statute include the legislative history as well as the statute's stated purpose). The TPPA provides that its purpose "is to encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law[,]" and that the TPPA is "necessary to implement the rights protected by Constitution of Tennessee, Article I, §§ 19 and 23, as well as by the First Amendment to the United States Constitution." Tenn. Code Ann. § 20-17-102. It also provides that the TPPA serves to "protect the rights of persons to file meritorious lawsuits for demonstrable injury." *Id.* Thus, while there is an interest in protecting the public's right to free speech, this interest

- 14 -

must be balanced against the rights of those seeking redress of a legitimate grievance.

Nonetheless, according to one of its sponsors, former senator Steve Dickerson, the TPPA was primarily intended to protect "citizens across Tennessee who are engaged in Constitutionally protected exercise of their First Amendment rights [who] have been subjected to frivolous lawsuits aimed at silencing them." *Hearing on S.B. 1097 Before the S. Judiciary Comm.*, 111th Gen. Assemb. (Tenn. Mar. 12, 2019) (statement of Sen. Steve Dickerson). Noting that SLAPP lawsuits "intimidate individuals and groups and deter them from speaking out on public issues[,]" Sen. Dickerson further explained that "the threat of costly, time consuming, and expensive litigation tends to silence whistleblowers, journalists, and political protestors." *Id.* Ultimately, Sen. Dickerson maintained that the TPPA serves to "protect the right of free speech and defend individuals from frivolous lawsuits." *Id.* Sen. Dickerson also invited Tennessee attorneys and citizens to testify regarding the TPPA, several of whom echoed the sentiment that the TPPA is imperative in protecting the public's right to free speech, protest, and assembly. Tellingly, at a different proceeding on March 18, 2019, Sen. Dickerson gave the following example of the type of case the TPPA should apply to:

> For example, you could have a window washing business, and you could get a bad rating on Yelp!. . . . And in order to go after that individual you could file a suit, even if that rating was legitimate, even if that person's opinion was well-founded. And what this suit does is intercedes in that process. . . . And what ends up happening is the individual, he or she who has put this rating, frequently will have to spend tens of thousands of dollars defending themselves during the discovery process of that trial. . . . What this bill does is allow a judge to look at the suit before the very expensive discovery portion of the suit comes up, and decide whether the suit has merit.

*S. Floor Sess. on S.B. 1097 Before the S.*, 111th Gen. Assemb. (Tenn. Mar. 18, 2019) (statement of Sen. Dickerson). The General Assembly passed the TPPA unanimously, and our review of the additional legislative proceedings at which the TPPA was discussed revealed no challenges to the TPPA's legislative intent as explained by Sen. Dickerson.

Bearing in mind our responsibility to construe the TPPA in light of "the wrong or evil which it seeks to remedy or prevent[,]" *Coffee Cnty.*, 574 S.W.3d at 845, the foregoing is highly probative here. Plaintiffs' interpretation of section 20-17-106 would require the parties to proceed through another layer of litigation in the circuit court before the case could ultimately be resolved at the appellate level, yet this is the precise scenario the TPPA seeks to avoid. A primary reason for the statute's enactment was the prevention of individuals incurring substantial costs associated with defending themselves in SLAPP litigation, which is accomplished by allowing courts to expediently resolve such cases prior to the often-expensive discovery phase and trial. Although Plaintiffs urge that they are entitled to a de novo hearing in circuit court, this result is in clear contravention of the

TPPA's purpose because it would force Defendant to contend with Plaintiffs' allegations for no less than the third time before appellate review would be available.[7] Under Plaintiffs' reading of section 20-17-106, SLAPP plaintiffs may file a case in general sessions court, proceed to circuit court, and then potentially appeal to this Court and beyond. Consequently, should we construe section 20-17-106 as Plaintiffs do, the result is circumvention of the TPPA's purpose and a largely ineffective statute. *See Baker*, 694 S.W.2d at 951 ("[T]he prime object is to ascertain the legislative intent from a consideration of the entire statute . . . and the consequences that would result from construing it one way or the other[.]" (quoting *Stiner*, 75 S.W.2d at 407)). This is plainly not the law; indeed, we may employ the presumption that the General Assembly did not intend to enact a toothless statute or an absurdity. *Lee Med., Inc.*, 312 S.W.3d at 527.

While the legislative history of the TPPA does not state directly that appeals under section 20-17-106 mandatorily lie in the Court of Appeals, "the overall tenor of the discussion strongly supports such an interpretation." *Robinson*, 140 S.W.3d at 324. Keeping in mind that "the cardinal rule of statutory construction is to effectuate legislative intent[,]" we simply cannot conclude that section 20-17-106 affords Plaintiffs the opportunity for an appeal to circuit court. *Coffee Cnty.*, 574 S.W.3d at 844 (citing *Spires*, 539 S.W.3d at 143). Rather, in light of the legislative history and the purpose of the TPPA, we conclude that section 20-17-106 confers exclusive jurisdiction upon this Court to adjudicate the appeal of an order "dismissing or refusing to dismiss a legal action pursuant to a petition filed under [the TPPA]." Tenn. Code Ann. § 20-17-106. Appeals pursuant to section 20-17-106 lie in this Court whether the order is final or interlocutory, and regardless of whether the case is appealed from general sessions or circuit court.

The circuit court did not err in concluding that it lacked subject matter jurisdiction over this appeal and in transferring the case to this Court. Because we conclude that the circuit court correctly transferred the case to this Court, Plaintiffs' second issue on appeal is pretermitted.

### 3. Plaintiffs' notice of appeal

Finally, Defendant asserts that Plaintiffs cannot challenge the circuit court's transfer order because Plaintiffs never filed a separate notice of appeal regarding the transfer order

---

[7] It is noteworthy that in this case, Plaintiffs initially filed suit in circuit court, but voluntarily dismissed the case and shortly thereafter refiled it in general sessions court. In a pleading filed by Plaintiffs, they admit to dismissing the case and refiling it in general sessions court under the misguided belief that the TPPA is a rule of civil procedure rather than a statute, and that the TPPA was therefore inapplicable to their case. Accordingly, Plaintiffs admit to the sort of forum shopping and gamesmanship anti-SLAPP legislation seeks to prevent, inasmuch as Plaintiffs' admitted strategy is to take as many bites at the apple as possible. As Defendant aptly notes in her principal brief, "the TPPA . . . was designed to prevent and deter such abuse, not to enable it."

itself.[8]  Because we have already concluded, however, that the circuit court properly transferred Plaintiffs' notice of appeal to this Court, this issue is without merit.  *See* Tenn. Code Ann. § 16-1-116 (providing that a court lacking subject matter jurisdiction shall transfer a civil action "to any other such court in which the action or appeal could have been brought at the time it was originally filed[,]" and that upon transfer, "the action or appeal shall proceed as if it had been originally filed in the court to which it is transferred on the date upon which it was actually filed in the court from which it was transferred").[9]  Moreover, Plaintiffs' issues on appeal ultimately go to the subject matter jurisdiction of this Court and the circuit court, and issues of subject matter jurisdiction can be raised at any time by the parties or the court *sua sponte*.  *See Johnson v. Hopkins*, 432 S.W.3d 840, 844 (Tenn. 2013) ("[S]ubject matter jurisdiction is a threshold inquiry, which may be raised at any time in any court.").  Accordingly, we see no reason why Plaintiffs were required to file a new notice of appeal in order to raise the questions at hand.  For the same reason, we also conclude that Plaintiffs did not waive their arguments regarding subject matter jurisdiction on appeal by failing to preserve those issues in the circuit court.  *See Freeman v. CSX Transp., Inc.*, 359 S.W.3d 171, 176 (Tenn. Ct. App. 2010) ("[T]he issue of subject matter jurisdiction need not be raised in the trial court to be considered on appeal." (citing *First American Trust Co. v. Franklin-Murray Dev. Co.*, 59 S.W.3d 135, 140–41 (Tenn. Ct. App. 2001))).

### E. Dismissal of Plaintiffs' case pursuant to the TPPA

Next, in her posture as appellee, Defendant argues that the general sessions court correctly dismissed Plaintiffs' case in its entirety pursuant to Defendant's TPPA petition. The Plaintiffs failed to respond to the substance of Defendant's arguments under the TPPA in both the general sessions court and in their briefs to this Court.  We therefore agree with the Defendant that the decision of the general sessions court should be affirmed.

Under the TPPA, the party petitioning the court for dismissal "has the burden of making a prima facie case that a legal action against the petitioning party is based on, relates to, or is in response to that party's exercise of the right to free speech, right to petition, or right of association."  Tenn. Code Ann. § 20-17-105(a).  The exercise of the right of free speech includes "communication[s] made in connection with a matter of public concern[,]" and matters of public concern include issues related to "[h]ealth or safety" or "[a] good, product, or service in the marketplace[.]"  *Id.* § 20-17-103(3), (6).  The petitioner may rely on sworn affidavits or other admissible evidence in reaching this burden.  *Id.* § 20-17-105(d).  If the petitioner satisfies his or her burden, the burden shifts to the responding party, who must "establish[] a prima facie case for each essential element of

---

[8] Although Defendant has not couched this issue as one pertaining to subject matter jurisdiction, the timeliness of a notice of appeal creates a jurisdictional question.  *Brooks v. Woody*, 577 S.W.3d 529, 533 (Tenn. Ct. App. 2018).

[9] It is undisputed that Plaintiffs' notice of appeal to circuit court was timely filed.

the claim in the legal action." *Id.* § 20-17-105(b). In the event the responding party does not meet this burden, the court "shall" dismiss the legal action. *Id.* A party's "response to [a TPPA] petition, including any opposing affidavits, may be served and filed by the opposing party no less than five (5) days before the hearing or, in the court's discretion, at any earlier time that the court deems proper." *Id.* § 20-17-104(c).

In this case, the communication at issue was an exercise of Defendant's right of free speech as that right is defined for purposes of the TPPA. *Id.* § 20-17-103. Defendant filed a timely TPPA petition challenging the substance of Plaintiffs' claims and alleging that as a matter of law, Defendant's Yelp! review was not defamatory. Defendant also raised several defenses to Plaintiffs' action. Plaintiffs failed to respond to the merits of the petition in accordance with the statute. *See id.* § 20-17-105(b). Rather, Plaintiffs' counsel argued at the hearing on the petition that the TPPA is a rule of civil procedure as opposed to a statute and that it was inapplicable in general sessions court. Plaintiffs made no substantive arguments, nor did they offer any sworn affidavits containing admissible evidence in support of their claims, notwithstanding the fact that the burden of proof had shifted to Plaintiffs by virtue of section 20-17-105(a) and (b). It was not until nearly a week later that Plaintiffs filed their "supplementary answer" to the TPPA petition and offered an affidavit by Dr. Nandigam. At the hearing in which the general sessions court ruled on Defendant's petition, the court noted that it had only received Plaintiffs' supplemental answer the afternoon before, and dismissed Plaintiffs' legal action based on the "lack of facts" offered by Plaintiffs.

The record reflects that the general sessions court was well-founded in its conclusion that Plaintiffs failed to meet their burden of proof under section 20-17-105(b), insofar as Plaintiffs essentially failed to respond to Defendant's TPPA petition at all. Indeed, under section 20-17-105(b), dismissal of Plaintiffs' legal action was mandatory unless Plaintiffs "establishe[d] a prima facie case for each essential element of the[ir] claim[s]." Moreover, Plaintiffs have not argued on appeal that the general sessions court erred in disregarding their late-filed response, nor have Plaintiffs made any argument to this Court that they can establish a prima facie case for each essential element of their claims. Rather, Plaintiffs have not addressed the substance of the underlying defamation and false light claims in their appellate briefs at all, but have pursued only the theory that this case should be remanded to the circuit court.

"It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Resp. of the Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010). Because Plaintiffs declined to respond to Defendant's TPPA petition in accordance with the statute and have made no argument on appeal as to how the general sessions court erred in its decision to dismiss Plaintiffs' case, we conclude that the general sessions court's decision should be affirmed. *See* Tenn. Code Ann. § 20-17-105(b), (c).

## F. The presumption of falsity doctrine in defamation cases

Defendant next urges this Court to take the opportunity to acknowledge that the "presumption of falsity doctrine" in defamation law is unconstitutional. Under the circumstances of this case, however, we need not reach this question. This Court "refrain[s] from addressing constitutional issues when a case can be decided on non-constitutional grounds." *Rodgers v. Rodgers*, No. M2004-02046-COA-R3-CV, 2006 WL 1358394, at *5 (Tenn. Ct. App. May 17, 2006) (citing *State v. Thompson*, 151 S.W.3d 434, 442 (Tenn. 2004); *Wilson v. Wilson*, 984 S.W.2d 898, 902 (Tenn. 1998)); *see also Haynes v. City of Pigeon Forge*, 883 S.W.2d 619, 620 (Tenn. Ct. App. 1994) ("[O]ur courts do not decide constitutional questions unless the issue's resolution is absolutely necessary for determination of the case and the rights of the parties.").

Here, it is unnecessary to address whether the presumption of falsity doctrine is unconstitutional in order to resolve this case, as we have already concluded that the general sessions court did not err in dismissing Plaintiffs' legal action based on their failure to respond to Defendant's TPPA petition in accordance with the statute. As such, we decline to consider this issue.

## G. Attorney's fees

Finally, Defendant asks this Court to award her attorney's fees incurred on appeal. Defendant asserts that she is entitled to her appellate attorney's fees because such an award is in keeping with section 20-17-107, which provides for costs and attorney's fees when a case is dismissed under the TPPA, as well as "[a]ny additional relief, including sanctions, that the court determines necessary to deter repetition of the conduct by the party who brought the legal action or by others similarly situated." As to this issue, we agree with Defendant.

"Tennessee has long followed the 'American Rule' with regard to attorney's fees." *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017) (citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000)). The American Rule provides that "a party in a civil action may recover attorney's fees only if: (1) a contractual or statutory provision creates a right to recover attorney's fees; or (2) some other recognized exception to the American Rule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (citing *Taylor v. Fezell*, 158 S.W.3d 352, 359 (2005)). Although Tennessee Code Annotated section 20-17-107 does not expressly provide for attorney's fees incurred at the appellate level, our Supreme Court has explained that "legislative provisions for an award of reasonable attorney's fees need not make a specific reference to *appellate* work to support such an award where the legislation has broad remedial aims." *Killingsworth v. Ted Russell Ford*, 205 S.W.3d 406, 409 (Tenn. 2006) (emphasis in original) (citing *Forbes v. Wilson County Emergency Dist. 911 Bd.*, 966 S.W.2d 417 (Tenn.

1998)); *see also Beacon4, LLC v. I&L Investments, LLC*, 514 S.W.3d 153, 211 (Tenn. Ct. App. 2016), *overruled on other grounds by In re Mattie L.*, 618 S.W.3d 335 (Tenn. 2021), (applying *Killingsworth* and concluding that the Prompt Pay Act allows for award of reasonable attorney's fees incurred on appeal).

We are required to construe the TPPA "broadly to effectuate its purposes and intent." Tenn. Code Ann. § 20-17-102. As discussed at length already, the TPPA is largely intended to deter SLAPP lawsuits and prevent litigants from spending thousands of dollars defending themselves in frivolous litigation. Consequently, as a matter of first impression, we conclude that the TPPA allows for an award of reasonable attorney's fees incurred on appeal, provided that the court dismisses a legal action pursuant to a petition filed under this chapter and that such fees are properly requested in an appellate pleading. *See* Tenn. Code Ann. § 20-17-107; *Killingsworth*, 205 S.W.3d at 409. Because we conclude that Plaintiffs' legal action was properly dismissed under the TPPA, and because Defendant properly requested her appellate fees in this case, Defendant's request for attorney's fees is well-taken. We remand this matter to the general sessions court for a determination of the proper amount of reasonable fees incurred by Defendant during this appeal.

## IV. CONCLUSION

The order of the General Sessions Court for Wilson County is affirmed and this case is remanded for further proceedings consistent with this opinion. On remand the general sessions court shall award Defendant her costs and reasonable attorney's fees incurred at both the trial and appellate level and shall resolve Defendant's outstanding request for sanctions against Plaintiffs pursuant to section 20-17-107(a)(2). We express no opinion regarding the outcome of Defendant's request for additional sanctions.

Costs of this appeal are assessed against the plaintiffs, Dr. Kaveer Nandigam and Nandigam Neurology, PLC, for which execution may issue if necessary.

_____ /s/ Kristi M. Davis _____
KRISTI M. DAVIS, JUDGE

- 20 -